In re WEST LAKELAND LAND COMPANY LIMITED PARTNERSHIP, Debtor.

WEST LAKELAND LAND COMPANY LIMITED PARTNERSHIP, Plaintiff,

v.

UNITED STATES of America, Defendant.

Bankruptcy No. 96–14434–8C1.
Adversary No. 96–1130.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Feb. 3, 1998.

Michael C. Markham, Clearwater, FL, for Plaintiff.

Jeffrey W. Frantz, North Miami, FL, Special Counsel to Debtor.

Robert L. Welsh, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC.

Brian P. Kaufman, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC.

### DECISION ON MOTIONS FOR SUMMARY JUDGMENT

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

This adversary proceeding came on for hearing on August 22, 1997, of the cross-motions for summary judgment filed by the parties (Documents Nos. 11 and 12). The parties have also filed supplemental briefs (Documents Nos. 14 and 15). In addition to the Rule 56 materials attached as exhibits to the motions, the parties have filed two stipulations (Documents Nos. 10A and 19).

The plaintiff in this adversary proceeding is the debtor, West Lakeland Land Company Limited Partnership ("plaintiff" or "Debtor Partnership"). The defendant is the United States of America.

In Count I of the complaint, the plaintiff seeks to invalidate federal tax liens filed by the defendant against the plaintiff's property.

The defendant filed these liens on account of unpaid Form 706 estate taxes and unpaid Form 1041 income taxes owed by the Estate of Martin Fridovich, deceased, claiming that the plaintiff is the nominee of the Estate of Martin Fridovich, deceased, and that the plaintiff was formerly known as West Lakeland Land Co., Inc., Fridovich Holdings, Inc., General Partner.

In Count II of the complaint, the plaintiff seeks damages for alleged violations of the automatic stay committed by the defendant when it failed to release the tax liens alleged in Count I. The plaintiff subsequently dismissed this count without prejudice on a voluntary basis (Document No. 18). The defendant consented to this dismissal, and the court therefore is no longer required to consider it.

In Count III of the complaint, the plaintiff seeks to avoid the tax liens alleged in Count I as fraudulent transfers within the meaning of Section 548 of the Bankruptcy Code.

Based upon the summary judgment record made by the parties, the court decides the issues as follows:

## I.

### FACTS

The following facts are without dispute on this summary judgment record:

Martin Fridovich died on December 4, 1981. In 1982, the Estate of Martin Fridovich ("Estate") filed a Form 706 federal estate tax return showing an outstanding liability of $3,883,147.43. On November 15, 1993, the Estate filed a Form 1041 federal fiduciary income tax return reflecting a tax liability in the amount of $219,548 for the period ending May 31, 1993. On September 15, 1995, the Estate filed a Form 1041 federal fiduciary income tax return reflecting a tax liability in the amount of $1,376,047 for the period ending May 31, 1995. As of the date of the events in dispute, May 31, 1995, the outstanding tax assessments against the Estate, including interest and penalties, exceeded $10 million. As of the date of the plain-

tiff's bankruptcy filing, October 22, 1996, the outstanding tax liability of the Estate with respect to these returns was $12,310,921.50, including interest and penalties.

As of May 31, 1995, the only substantial asset of the Estate was its 100 percent ownership interest in the common stock of West Lakeland Land Co., Inc. ("Company"). The assets of the Company were real estate, notes, and mortgages receivable. The value of the Estate's assets was substantially less than the Estate's tax liability.

Because the Estate had a negative net worth and because the sale of the assets of the Company to pay the Estate's taxes would create additional taxable gain, the Estate wished to compromise its tax liabilities in a comprehensive, once and for all manner. Accordingly, the Estate devised a plan that would satisfy all the technical tax law requirements, settle all tax issues, and allow the acceptance by the defendant of an offer of compromise. This plan required the liquidation of the Company.[1] The defendant ultimately agreed to the offer of compromise.

On May 25, 1995, therefore, the Company began to execute its plan. It filed its Articles of Dissolution with the Secretary of State of the State of Florida. By IRS Form 966 (Corporate Dissolution or Liquidation), dated May 30, 1995, the Company indicated that it would engage in a complete corporate liquidation pursuant to Sections 331 and 336 of the Internal Revenue Code by May 31, 1995. Additionally, the Company stated on this Form 966 that the last month, day, and year of its existence would be May 31, 1995.

On May 25, 1995, before the Company made its liquidating distribution, a limited partnership named West Lakeland Land Company Limited Partnership ("Partnership"), the debtor and the plaintiff in this adversary proceeding, was formed. The sole general partner was Fridovich Holdings, Inc., owning one percent of the partnership. The sole limited partner was the Estate, owning 99 percent of the partnership.

At the end of May, 1995, when the Debtor Partnership was formed and the Company

---

1. The other details of the Estate's plan and the explanations for the necessity of these details as part of the plan are not important to the issues the court decides here.

was dissolved, all of the assets of the Company were directly transferred to the Debtor Partnership. The interests in real property of the Company were directly transferred to the Debtor Partnership through deeds and assignments that were recorded in the Public Records of Polk County, Florida. The Company transferred the other assets directly to the Debtor Partnership through other written instruments.

When the Company completed its liquidation on May 31, 1995, both Company and Estate filed federal tax returns. These returns claimed a complete corporate liquidation under Sections 331 and 336 of the Internal Revenue Code demonstrating a transfer of the property and assets of the Company to its sole shareholder, the Estate, notwithstanding the fact that the transfer had actually been made directly to the Partnership.

The defendant contends the Company constructively transferred the property to the Estate because:

1. Form 1120S of the federal income tax return of the Company for the period ending May 31, 1995, Line 20 of Schedule K-1 (Shareholder's Share of Income, Credits, Deductions, etc.) reflects the distribution of all of the Company's assets to its sole shareholder, the Estate, on or before May 31, 1995, the last day of existence of the Company. Further, Line 1 of Schedule K-1 reflects income of $2,896,291 to the Company as a result of this liquidating distribution to the Estate, pursuant to Section 336 of the Internal Revenue Code.

2. Because the Company was an "S" Corporation, the income the Company recognized as a result of its distribution was reported as "flowing through" to the Estate. This result was reflected on Schedule E of the Estate's Form 1041 federal fiduciary income tax return for the period ending May 31, 1995, where the Estate reported income of $2,896,291 on Line 27C. In addition, as a result of the liquidating distribution of the Company's assets to the Estate, the Estate reported on Schedule D (Capital Gains and Losses) of its Form 1041 return an exchange of its shares of stock in the Company for the assets of the Company. Based on this ex-

change, the Estate recognized a capital loss of $2,588,869, pursuant to Section 331 of the Internal Revenue Code.

3. On May 25, 1995, before the Company made its liquidating distribution, the Debtor Partnership was formed with two partners. The general partner was Fridovich Holdings, Inc. The sole limited partner was the Estate. Contributions of the partners of the Debtor Partnership reflect that the Estate anticipated contributing $4,500,000 to the Debtor Partnership in exchange for a 99 percent interest in the partnership.

4. As reported, the property contributed to the Partnership by the Estate consisted of the assets it received in the liquidating distribution of the Company that occurred on May 31, 1995. As reported on Schedule K-1 of the Form 1065 federal partnership return of the Debtor Partnership for the period June 1, 1995, through December 31, 1995, the Estate contributed $5,083,873 in assets that it received from the Company to the Debtor Partnership in exchange for a 99 percent interest in the Partnership. As reported, the Estate held all the assets of the Company as of June 1, 1995.

5. As demonstrated by the IRS Form 966 and the tax returns described above, on May 31, 1995, the Company appears to have distributed all of its assets to Estate as part of a liquidating distribution under Sections 331 and 336 of the Internal Revenue Code. Then, between June 1, 1995, and December 31, 1995, the Estate appears to have contributed these assets to the Partnership in exchange for 99 percent interest in the Partnership.

The defendant argues that the court should determine that the transfer was constructively made to the Estate because the Estate and the Company represented this transfer for federal tax purposes. Although the transaction was reported as if the Company liquidated by transferring its property and assets directly to the Estate, the property and assets were in fact transferred directly to the Debtor Partnership. The Unanimous Written Consent of the Sole Shareholder of West Lakeland Land Company, Inc., In Lieu of Meeting reflects that this transaction was merely to be deemed to

have occurred. In this Consent, the Estate resolved, in part, that:

> [T]he Corporation shall completely liquidate in accordance with Section 331 of the Internal Revenue Code of 1986, as amended ("Code"), and that all of the assets of the Corporation shall be distributed to West Lakeland Land Company Limited Partnership, which distribution shall be *deemed* to be a liquidating distribution to the sole Shareholder of the Corporation. The foregoing distribution shall occur at any time after the effective date hereof, and no later than May 31, 1995. (Emphasis added).

At the time of the transfer of the property in May, 1995, the defendant had filed no tax lien against the Estate, the Company, or the Debtor Partnership. On January 4, 1996, and February 22, 1996, the defendant filed tax liens against the Estate. The defendant has never filed a tax lien against the Company. On March 19, 1996, the defendant filed nominee tax liens against the Debtor Partnership. The defendant filed tax liens against the Debtor Partnership's property as nominee of the Estate because it understood, based upon the way in which the liquidation of Company was reported, that the assets of the Company had been constructively transferred to the Estate in connection with that liquidation. The Debtor Partnership then filed its Chapter 11 petition on October 22, 1996.

Finally, at all times material, neither the Company nor the Debtor Partnership has had any federal tax liability.

## II.

### DISCUSSION

On these undisputed facts, the court is able to determine the issues as follows:

1. *Jurisdiction.*

The court has jurisdiction of the parties and the subject matter pursuant to the provisions of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and the standing, general order of reference entered by the district court. This is a core proceeding within the meaning of 28 U.S.C. § 157(b) and an adversary proceeding governed by the Federal Rules of Bankruptcy Procedure, including Part VII of those rules.

2. *State Law Controls Which Property Is Available for The Attachment of Federal Tax Liens.*

When a taxpayer refuses or neglects to pay his assessed federal tax liabilities, federal tax liens in favor of the United States attach to all property and rights to property belonging to taxpayer. 26 U.S.C. § 6321. As a matter of law, the federal tax liens arise at the time of assessment "and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322.

 The federal tax liens attach to all property and rights to property belonging to the taxpayer at any time during the period of the lien, including any property or rights to property acquired by such person after the lien arises. Treas. Reg. § 301.6321–1. The tax lien is not affected by the transfer of property subsequent to the attachment of the lien. 26 U.S.C. § 6332(b).

Because the Estate had tax obligations that were assessed and unpaid long before the transfer of the Company's property and assets, it is clear that under these facts there was a federal tax lien on the Estate's property in place at the time of the transfer. The lien attached to all property of the Estate including, at the very least, the stock of the Company.

 The central issue in this dispute, however, is whether the Estate at any time owned the property and the assets of the Company that are now owned by the Debtor Partnership. If this issue is decided affirmatively, the lien attached to that property as well. *Id.* State law controls this issue. *Aquilino v. United States,* 363 U.S. 509, 514, 80 S.Ct. 1277, 1280–81, 4 L.Ed.2d 1365 (1960).

 Under Florida law the dissolution of a corporation does not operate to transfer

an interest in the corporation's property to the corporation's shareholder. § 607.1405(2), Fla. Stat.; *In re Miner*, 185 B.R. 362, 366 (N.D.Fla.1995), *aff'd*, 83 F.3d 436 (11th Cir. 1996). In addition, an interest in real property cannot be conveyed other than by deed. § 689.01, Fla. Stat.

■ In this case, there was no actual transfer of title to the Company's assets to the Estate. The Estate therefore has never had any actual ownership interest in the property that was formerly owned by the Company and is now owned by the Debtor Partnership. Although the defendant argues that this ownership occurred when the Company "constructively" transferred the property to the Estate for federal income tax purposes[2], there is no authority that supports the proposition that a "constructive" or "deemed" transfer of property to the Estate for federal income tax purposes is sufficient to create the *actual* interest in property required by Florida law for the attachment to that property of federal tax liens later filed against the Estate. Because the defendant's sole basis for filing the tax liens that are in dispute is the alleged constructive transfer that occurred solely for federal income tax purposes, the defendant cannot sustain its position as a matter of Florida law.

Regardless of what should have happened for a liquidation to occur under Sections 331 and 336 of the Internal Revenue Code, it is clear that the transfer of property in this case went from the Company directly to the Debtor Partnership and not to the Estate. The court must look to what actually happened to determine if the tax liens are valid. The court cannot decide the tax lien issue, which turns on Florida property law, based on how the parties should have structured the transaction to obtain the tax treatment they claimed and reported on the returns. The fact is they did not in fact structure the transaction that way.

■ Alternatively, the defendant argues that the Debtor Partnership is estopped from asserting that the Estate did not have a property interest in the assets and property now owned by the Debtor Partnership and previously owned by the Company. The defendant bases this argument on the fact that, to obtain favorable tax treatment pursuant to Sections 331 and 336 of the Internal Revenue Code, the parties reported the transaction as if the Company had transferred the property to the Estate and the Estate then transferred the property to the Debtor Partnership. This estoppel argument fails for several reasons. First, the defendant did not plead estoppel as an affirmative defense, and the defendant did not raise the issue until the time of its summary judgment motion.

■ Second, even had the defendant properly and timely raised an estoppel defense, that defense would fail. See, *National Companies Health Benefit Plan v. St. Joseph's Hospital of Atlanta, Inc.*, 929 F.2d 1558, 1572 (11th Cir.1991) (elements of estoppel under federal common law). The tax returns and other public documents simply acknowledge a taxable gain or loss; the returns make no express representation of an actual transfer of an interest in property under Florida law to the Estate.

In addition, the defendant points to no detrimental reliance on its part. Indeed, the

---

**2.** The defendant contends that the Company had to have transferred to the Estate the property (and that the Estate later transferred the property to the Debtor Partnership), thus allowing the liens to attach to the property, because all the parties reported the transaction as a Sections 331 and 336 liquidation. The defendant further contends that the transfer of the property to the Estate as shareholder of the Company being liquidated is a requirement for a Sections 331 and 336 liquidation. For a liquidation under Sections 331 and 336 to have occurred, the Company was required to distribute all of its property to the Estate, the sole shareholder of the Company. Section 331 of the Internal Revenue Code states that "[a]mounts *received by a shareholder*

*in a distribution* in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock." 26 U.S.C. § 331(a) (emphasis added). As a result, a Section 331 liquidation can only occur when a shareholder receives a distribution of a corporation's property in exchange for the shareholder's stock in the corporation. The Debtor Partnership asserts that it is sufficient if the distribution is merely deemed to have occurred and does not actually occur, citing Rev. Rul. 69–534, 1969–2 C.B. 48. The defendant disputes this interpretation. The court is not required to determine this issue because the tax consequences of the transaction are not before the court.

position in which the defendant finds itself appears to remain the same as it was formerly. Before the liquidation of the Company, the Estate owed the defendant unpaid taxes, and the Estate owned stock in the Company. The Company in turn owned assets. The defendant could enforce the Estate's tax obligations against the Estate's property, the stock of the Company, but not against the Company's assets. After the liquidation, the Estate still owes the defendant unpaid taxes, and the Estate owns the entire limited partnership interest in the Debtor Partnership. The Debtor Partnership in turn owns assets. The defendant can enforce the Estate's unpaid tax obligations against the Estate's property, the partnership interest, but not against the partnership's assets. Were the court to accept the defendant's "constructive" transfer theory, the position of the defendant would be significantly enhanced because it would have liens against the property formerly owned by the Company and now owned by the Debtor Partnership—liens it did not have before.

Regardless of whether the Company is or was entitled to the benefit of liquidation under Sections 331 and 336 of the Internal Revenue Code based on the transaction that in fact occurred—an issue not before the court—the defendant may not recharacterize the transaction to create a property right that would allow a nominee tax lien. Because the Estate never held title to the assets now owned by the Debtor Partnership, the defendant's tax liens filed against the Debtor Partnership's property as "nominee" of the Estate are null and void. They create and constitute no lien on the Debtor Partnership's property.

### 3. *Fraudulent conveyance.*

Because the court has determined that the tax liens at issue are null and void, the court is not required to determine if they also constitute fraudulent conveyances under Section 548 of the Bankruptcy Code.

## III.

### CONCLUSION

For the foregoing reasons, the court grants the plaintiff's motion for summary judgment and denies the defendant's motion for summary judgment. Pursuant to the provisions of F.R.B.P. 7054(b), each party shall bear its own costs of action, the court finding no equities to justify an allowance of costs in the plaintiff's favor. Pursuant to the provisions of F.R.B.P. 9021, the court will enter a separate judgment voiding the tax liens in accordance with this decision.