Peter J. BRESSON (Transferee),
Petitioner–Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent–
Appellee.

No. 98–71377.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 14, 2000

Filed May 31, 2000

Willard D. Horwich, Beverly Hills, California, for the petitioner-appellant.

John A. Dudeck, Jr., Tax Division, United States Department of Justice, Washington, D.C., for the respondent-appellee.

Before: TASHIMA and GRABER, Circuit Judges, and STOTLER,[1] District Judge.

STOTLER, District Judge:

## I.

### SUMMARY

This case involves efforts by the Internal Revenue Service (IRS) to collect taxes owed by Petitioner's corporation directly from Petitioner. The taxes arose in connection with the corporation's transfer of real property to Petitioner and Petitioner's subsequent sale of that property to an unrelated third party. The IRS's right to assess taxes directly against Petitioner de-

1. The Honorable Alicemarie H. Stotler, United States District Judge for the Central District of California, sitting by designation.

rives from the transferee liability provisions of 26 U.S.C. § 6901, and from the provisions of the California Uniform Fraudulent Transfer Act (CUFTA), Cal. Civ.Code §§ 3439.01–12, under which the transfer from the corporation to Petitioner was fraudulent. The sole question raised on appeal is whether the Tax Court properly held Petitioner liable under 26 U.S.C. § 6901 notwithstanding the fact that the IRS issued Petitioner its notice of deficiency after the limitations period had lapsed for a cause of action under the CUFTA. For the reasons set forth below, we conclude that the Tax Court did not err. Accordingly, we affirm the judgment of the Tax Court.

## II.

### STANDARD OF REVIEW

 The Tax Court's determination of the time limitations applicable to an action to set aside fraudulent transfers is subject to de novo review. *See United States v. Bacon,* 82 F.3d 822, 823 (9th Cir.1996).

## III.

### FACTUAL AND PROCEDURAL BACKGROUND [2]

Jaussaud Enterprises, Inc. (Jaussaud), owned a parcel of real property on Hidalgo Avenue, Alhambra, California (the Alhambra property), at the beginning of 1990. Petitioner, the sole owner and officer of Jaussaud, resided at the property.

On July 5, 1990, Jaussaud executed a grant deed conveying the Alhambra property to Petitioner. On the same date, Petitioner executed a grant deed conveying the Alhambra property to an unrelated third party. The net proceeds were $266,-680, which Petitioner retained. Petitioner,

however, did not report any corresponding capital gain on his personal income tax return for the year 1990. Instead, Jaussaud reported a $194,705 capital gain in connection with the transaction in its tax return for the fiscal year ended February 28, 1991 (filed March 5, 1993). The corresponding tax payment was not remitted.

After unsuccessful efforts to secure payment from Jaussaud (and to locate Jaussaud's assets in order to subject them to federal income tax liens), the IRS sent Petitioner a Notice of Transferee Liability dated August 2, 1996. The notice asserted that Petitioner was liable in the amount of $73,839. That figure comprised $41,965 of Jaussaud's unpaid corporate income taxes for the year ended February 28, 1991, as well as interest and penalties. The notice showed that Petitioner's liability was based on his being the transferee of the Alhambra property. On the same date, the IRS sent Petitioner a Notice of Deficiency. Petitioner challenged the assessment before the Tax Court.

The Tax Court held that the transfer of the Alhambra property was a fraudulent transfer under the CUFTA—specifically California Civil Code § 3439.04(b). Furthermore, a decisive majority [3] of the judges on the Tax Court held that, because of the fraudulent transfer, 26 U.S.C. § 6901(a)(1)(A) gave the IRS authority to proceed against Petitioner in order to collect the tax liabilities of Jaussaud. [4]

In reaching its determination, the Tax Court acknowledged four points. First, Section 6901(a)(1)(A) does not create a new liability, but merely provides a remedy for enforcing an existing liability of the transferor. [5] Second, the extent of a transferee's liability under Section 6901(a)(1)(A)

---

2. The relevant facts in this case are not in dispute. They are summarized in the opinion of the Tax Court at 111 T.C. 172, 173–78, 1998 WL 485464 (1998).

3. Twelve judges on the Tax Court joined the author of the majority opinion. Four judges dissented.

4. Title 26 U.S.C. § 6901(a)(1)(A) provides that the IRS may assess and collect a transferee's legal and equitable liabilities when those liabilities were incurred in connection with the tax liability of the transferor.

5. *See Coca–Cola Bottling Co. v. Commissioner,* 37 T.C. 1006, 1962 WL 1214 (1962), *aff'd,* 334 F.2d 875, 877 (9th Cir.1964); *Mysse v. Com-*

for the transferor's tax obligations turns on state law [6]—in this case, the CUFTA. Third, the court noted that, pursuant to California Civil Code § 3439.09(b), claims under Section 3439.04(b) of the CUFTA are ordinarily "extinguished" if they have not been brought within four years of the relevant fraudulent transfer.[7] Finally, the court held that the IRS's Notice of Deficiency against Petitioner had been served beyond the four-year "extinguishment" period contemplated in the CUFTA. The Court concluded, however, that none of the foregoing points invalidated the IRS's assessment against Petitioner.

The Tax Court's conclusion was based on the view that the "extinguishment" provision of the CUFTA was in all relevant respects a statute of limitations. State statutes of limitations are inapplicable to bar the claims of the United States. In this case, what was relevant was that the IRS had made its assessment against Petitioner within the time limitations imposed by 26 U.S.C. § 6901(c)—the federal limitations period for assessments of transferee liability.[8]

The Tax Court's ruling, however, was not unanimous. The dissenting judges

concluded that the extinguishment provision contained in the CUFTA *did* operate to deprive the IRS of any right to proceed against Petitioner. In articulating its view, the dissent emphasized what it regarded as an important distinction between a true statute of limitations and a limitations period that forms an inherent element of a state-law cause of action. According to the dissent, the traditional rule that state statutes of limitations do not apply to the United States only applies to true statutes of limitations; the rule does not apply where, as under the CUFTA, compliance with the relevant time requirements is an element of the claim.

## IV.

### *DISCUSSION*

**A. Relevant Law**

The rule that the United States is not subject to state statutes of limitations is largely derived from, and limited by, two Supreme Court cases from the first half of the twentieth century: *United States v. Summerlin,* 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940), and *Guaranty Trust Co. v. United States,* 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224 (1938).[9]

*missioner,* 57 T.C. 680, 700–01, 1972 WL 2536 (1972).

6. *See Commissioner v. Stern,* 357 U.S. 39, 45, 78 S.Ct. 1047, 2 L.Ed.2d 1126 (1958); *Hagaman v. Commissioner,* 100 T.C. 180, 183–85, 1993 WL 69243 (1993); *Gumm v. Commissioner,* 93 T.C. 475, 479–80, 1989 WL 118714, *aff'd,* 933 F.2d 1014 (9th Cir.1991).

7. Section 3439.09(b) of the CUFTA provides: A cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished . . .:
(b) under subdivision (b) of Section 3439.04 or Section 3439.05, within four years after the transfer was made or the obligation was incurred.

8. Section 6901(c) sets a federal limitations period within which the rights of the IRS under that section must be exercised. It provides that the Commissioner may assess a transferee for taxes owed by the transferor within one year after the expiration of the period of limitations for assessment against the transferor. Under Section 6501, the peri-

od of limitations for assessments against a taxpayer is generally three years from the filing of the tax return.

In this case Jaussaud filed its federal corporate income tax return for the tax year ended February 28, 1991, on March 5, 1993. Accordingly, under § 6901(c) the Commissioner had until March 5, 1997, to assess Petitioner's transferee liability. The Commissioner's Notice of Transferee Liability and Notice of Deficiency, dated August 2, 1996, were therefore timely for purposes of § 6901(c).

9. Although cited by Petitioner and mentioned by the dissenting members of the Tax Court, *Custer v. McCutcheon,* 283 U.S. 514, 51 S.Ct. 530, 75 L.Ed. 1239 (1931) is of little relevance in defining the scope of the federal common law rule of the United States' immunity from state statutes of limitations. In *Custer,* the Court ruled, *as a matter of federal statutory interpretation,* that Congress intended the United States to be treated no differently from a private litigant under the federal statute there at issue. *See id.* at 519, 51 S.Ct. 530.

In *Summerlin*, the Federal Housing Administrator, acting on behalf of the United States, had become the assignee of a claim against a decedent's estate. A state statute provided that any claim against such an estate would be "void" if filed more than eight months after the first publication of notice to creditors. The United States filed its claim against the estate beyond the eight-month period. A unanimous Court held that, to the extent that the state statute purported to render void a claim of the United States, it "transgressed the limits of state power." *Id.* at 417, 60 S.Ct. 1019. It was well settled that the United States is neither bound by state statutes of limitations nor is subject to the defense of laches, and that the same rule applies whether the United States brings its suit in its own courts or in those of a state. *See id.* at 416, 60 S.Ct. 1019. The Court articulated its rationale in the following terms: "When the United States becomes entitled to a claim, acting in its governmental capacity and asserts its claim in that right, it cannot be deemed to have abdicated its governmental authority so as to become subject to a state statute putting a time limit upon enforcement." *Id.* at 417, 60 S.Ct. 1019.

Some of the limits of the seemingly broad principle announced in *Summerlin* are implicit in the *Summerlin* Court's favorable citation to the *Guaranty Trust* opinion, issued two years earlier. In *Guaranty Trust*, the Court addressed a situation in which, by executive agreement, the United States had become the assignee of all amounts owed to the Soviet Union by American nationals. The United States made demand upon the Guaranty Trust Company for monies deposited there by representatives of previous Russian governments. The action was dismissed on the ground that, at the time the United States government was assigned the rights of the Soviet government, New York's six-year statute of limitations already had run against the Soviet Union. In affirming the district court's decision to dismiss the case, the Supreme Court identified the policies underlying the United States government's

traditional exemption from state statutes of limitations: " 'The true reason * * * is to be found in the great public policy of preserving the public rights, revenues, and property from injury and loss, by the negligence of public officers.' " *Guaranty Trust*, 304 U.S. at 132, 58 S.Ct. 785 (quoting *United States v. Hoar*, 26 F. Cas. 329, 330 (C.C.D.Mass.1821) (No. 15,373) (Story, J.)). The Court further concluded that those policies were not implicated under the circumstances of the *Guaranty Trust* case.

> There has been no neglect or delay by the United States or its agents, and it has lost no rights by any lapse of time after the assignment.... [Enforcement of the statute of limitations] deprives the United States of no right, for the proof demonstrates that the United States never acquired a right free of a preexisting infirmity, the running of limitations against its assignor, which public policy does not forbid.

*Id.* at 141–42, 58 S.Ct. 785.

Taken together, *Summerlin* and *Guaranty Trust* suggest two countervailing principles. On the one hand, if the United States comes into possession of a valid claim, that claim cannot be "cut off" later by a state statute of limitations. On the other hand, if a claim *already has become infirm* (for example, when a limitations period expires) by the time the United States acquires the purported right, the rule of *Summerlin* will not operate to revive the claim.

In a recent opinion affirming a decision of this court, the Supreme Court has signaled some additional, pragmatic considerations that must inform our *Summerlin* analysis. In *United States v. California*, 507 U.S. 746, 113 S.Ct. 1784, 123 L.Ed.2d 528 (1993) (*California II*), the Supreme Court addressed a situation in which the United States had bound itself contractually to reimburse certain government contractors for expenses incurred in managing Naval Petroleum Reserves. The State of California had assessed millions of dollars

in taxes against one such contractor, and the contractor had paid the taxes under protest that they were improper under California law. Subsequently, the United States filed suit in the district court seeking return of the taxes, *inter alia*, as a subrogee of the contractor. However, the United States filed its claim after the expiration of a ninety-day claim period applicable to tax refund actions.[10]

This court concluded that compliance with the ninety-day filing requirement was a condition precedent to the very accrual of a claim against the State. *See United States v. California*, 932 F.2d 1346, 1351 (9th Cir.1991) (*California I*). Further, it was held that when a temporal limitations period operates as such a condition precedent to the accrual of a claim, the rule of *Summerlin* does not apply.[11] *See id.* The failure of the United States to comply with that condition meant that the United States "had no cause of action for a tax refund" so its claim was dismissed properly. *Id.*

The Supreme Court affirmed the Ninth Circuit's ruling, but it did not rely on the distinction between a "true" statute of limitations and a limitations period that forms a condition precedent to the accrual of a claim. Instead the Court suggested that two relatively functional considerations should govern the application of the *Summerlin* rule. *Summerlin* applies (1) when "the right at issue was obtained by the government through, or created by, a federal statute," and (2) when "the government was proceeding in its sovereign capacity." *California II*, 507 U.S. at 757, 113 S.Ct. 1784. Those conditions were not present in the *California* case because there the United States' purported right of recovery derived solely from the equitable doctrine of subrogation and from the United States' status as a subrogee. Quoting *Summerlin*, the Court reinforced the principle that, "when the United States be-

comes entitled to a claim, acting in its governmental capacity, and asserts its claim in that right, it cannot be deemed to have abdicated its governmental authority so as to become subject to a state statute putting a time limit upon enforcement." *Id.* at 757–58, 113 S.Ct. 1784.

After the Supreme Court decided *California II*, the Ninth Circuit had occasion to assess the applicability of the *Summerlin* rule in the context of state lien-extinguishment provisions. In *United States v. Thornburg*, 82 F.3d 886 (9th Cir.1996), the United States, acting through the Small Business Administration, sought to foreclose a lien that it had acquired as guarantor of a loan taken out by the landowner. By the time the government attempted foreclosure, the lien had been "extinguished" under applicable state law.[12] Citing both *Guaranty Trust* and *Summerlin*, we treated the extinguishment provisions of the relevant statutes like ordinary statutes of limitations and held them inapplicable to the United States. *See id.* at 893–94.

## B. Analysis

▮ Petitioner contends that the IRS is not exempt from the claim-extinguishment provisions of the CUFTA because those provisions are not "ordinary" statutes of limitations. Rather, the temporal limitations embodied in California Civil Code § 3439.09 constitute an essential element of any claim under the CUFTA. Petitioner argues that, under decisions such as *California I*, 932 F.2d 1346, the rule of *Summerlin* does not apply in these circumstances. Petitioner notes that certain district courts within the Ninth Circuit have reached a similar conclusion regarding the claim-extinguishment provisions of the Uniform Fraudulent Transfer Act. *See United States v. Vellalos*, 780 F.Supp. 705 (D.Haw.1992), *appeal dismissed*, 990 F.2d 1265 (9th Cir.1993) (unpublished table de-

10. *See* Cal. Rev. & Tax.Code § 6933.

11. The court's ruling in this regard was consistent with prior Ninth Circuit precedent. *See United States v. California*, 655 F.2d 914

(9th Cir.1980); *United States v. Hartford Accident & Indem. Co.*, 460 F.2d 17 (9th Cir.1972).

12. *See* Okla. Stat. tit. 42, § 23; Cal. Civ.Code § 2911.

cision); *United States v. Wright,* No. CIV–S–94–1183 EJG/GGH, 1995 WL 792084 (E.D.Cal. Nov.6, 1995).

We find Petitioner's argument unpersuasive for two reasons. First, as a preliminary matter, Petitioner fails to distinguish between the CUFTA's claim-*extinguishment* provisions on the one hand, and timing requirements that form *conditions precedent* to the *accrual* of a claim on the other. Earlier Ninth Circuit authority concluded that *Summerlin* was inapplicable when compliance with the states' timing requirements was held to be essential to the accrual of the government's claim. Those cases represented an extension of the reasoning in *Guaranty Trust,* but they remained consistent with the core teaching of *Summerlin:* they did not involve a situation in which a valid cause of action had accrued to the United States only to perish later through the passage of time. The premise underlying decisions such as this court's ruling in *California I* was that, because certain steps were not taken within the statutorily specified time, no right of action ever accrued to the United States in the first place. Extinguishment provisions, such as those in the CUFTA, operate differently. By design, an extinguishment provision causes a valid, fully accrued right of action to lose its vitality through the passage of time—precisely the result against which *Summerlin* protects the United States. The significance of this conceptual distinction is suggested by this court's treatment of the lien-extinguishment provisions at issue in *Thornburg.* There, we held that the rule of *Summerlin* applies to claim-extinguishment provisions just as it applies to traditional statutes of limitations. *See* 82 F.3d 893–94.

Apart from the formal, logical flaw in Petitioner's argument, we also find Petitioner's position untenable because it is inconsistent with the principles recently articulated by the Supreme Court in *California II.* As noted above, although the Supreme Court affirmed the Ninth Circuit's decision in *California I,* the Supreme Court did not rely on the distinction between a "true" statute of limitations and a limitations provision that forms an "integral part" of the relevant cause of action. Instead, the Supreme Court suggested that the rule of *Summerlin* did not apply because in the *California* case (1) the right at issue was not acquired through the operation of any federal law, and (2) the United States did not come to possess the relevant right by acting in its sovereign capacity. When we view the present case in the light of those factors, the most plausible conclusion is that the CUFTA's "extinguishment" provision cannot evade the rule of *Summerlin.* First, although the IRS must rely on the CUFTA to establish Petitioner's transferee liability, the government's underlying right to collect money in this case clearly derives from the operation of federal law (i.e., the Internal Revenue Code). Second, in its efforts to collect taxes, the United States unquestionably is acting in its sovereign capacity; indeed, the right to collect taxes is among the most basic attributes of sovereignty. Because the United States is here acting in its sovereign capacity in an effort to enforce rights ultimately grounded on federal law, the rule of *Summerlin* will not allow the "extinguishment" of a valid, fully accrued claim by the IRS brought under the CUFTA. To the extent that cases such as *Vellalos* and *Wright* are inconsistent with this holding, we disapprove them.[13]

---

**13.** We note that the holding in *Vellalos* has been criticized by numerous district courts outside the Ninth Circuit, and it also is inconsistent with the holdings of other Courts of Appeals. *See United States v. Wurdemann,* 663 F.2d 50 (8th Cir.1981); *United States v. Fernon,* 640 F.2d 609 (5th Cir.1981); *United States v. Cody,* 961 F.Supp. 220 (S.D.Ind. 1997); *United States v. Kattar,* 97–1 USTC par. 50,132 (D.N.H.1996); *United States v. Smith,* 950 F.Supp. 1394 (N.D.Ind.1996); *United States v. Zuhone,* 78 A.F.T.R.2d 96–5106 (C.D.Ill.1996); *United States v. Hatfield,* 77 A.F.T.R.2d 96–1969 (N.D.Ill.1996); *Flake v. United States,* 76 A.F.T.R.2d 95–6957 (D.Ariz.1995); *Stoecklin v. United States,* 858 F.Supp. 167 (M.D.Fla.1994). All these cases

We are mindful that the claim-extinguishment provision of the CUFTA is in fact a *conscious* attempt to evade the rule of *Summerlin.* As we observed in *Bacon,* 82 F.3d at 824 n. 2: "Apparently the extinguishment provision was designed in part to bar actions asserted by the government under the *Summerlin* rule[.] ... In this regard, the provision appears to be a dressed-up statute of limitations, crafted to circumvent the rule of *Summerlin.*" To allow states to evade the *Summerlin* rule by the simple expedient of renaming their statutes of limitations is inconsistent with the core teaching of *Summerlin*—namely, that states "transgress the limits of state power" when they attempt to set limitations periods on claims acquired by the United States in its governmental capacity. Our decision today makes clear the impermissibility of such an attempt.

## V.

### *CONCLUSION*

The Tax Court did not err in holding the CUFTA's claim-extinguishment provision inapplicable to the IRS.

AFFIRMED.

arise in the tax-collection context. Without endorsing the holding in *Vellalos,* this court has noted other courts' disagreement with the

*Vellalos* opinion. *See Bacon,* 82 F.3d at 824 (9th Cir.1996).