T.C. Memo. 2001-32

UNITED STATES TAX COURT

EDWARD FRIDOVICH, TRANSFEREE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4585-98.                    Filed February 12, 2001.

<u>Steven C. Greene</u>, for petitioner.

<u>Judith C. Winkler</u>, for respondent.

MEMORANDUM OPINION

JACOBS, <u>Judge</u>:  This case was submitted to the Court fully
stipulated under Rule 122.  Rule references are to the Tax Court
Rules of Practice and Procedure.  Section references are to the
Internal Revenue Code.

On December 22, 1997, respondent issued to Edward Fridovich a
notice of transferee liability with respect to assets petitioner

received from the Estate of Martin Fridovich (the estate), Deceased

(petitioner's father's estate), in the amount of $1,331,521.[1]

---

[1] The Dec. 22, 1997, notice of transferee liability listed the following assets as having been distributed to petitioner:

| Date | Cash |
|------|------|
| 3/5/85 | $5,000 |
| 10/28/85 | 7,500 |
| 12/16/88 to various attorneys | 75,000 |
| 2/2/90 to various attorneys | 10,000 |
| Cayman Islands Trust | 207,435 |
| Total | 304,935 |

The total value of the property distributed to petitioner in the Settlement and Distribution Agreement recorded 12/28/93 in Polk County records OR 3326, at 1567, was also enumerated in the notice of transferee liability:

| Property | Value |
|----------|-------|
| Attorney's fee obligations | $225,000 |
| Direct payment endorsed to Bogenschutz & Goldstein | 175,000 |
| Industrial park lot 8, 4.573 acres | 143,719 |
| Industrial park lot 9, 3.388 acres; lots 8 and 9 sold to Mannheim Auctions as part of a 15.6986-acre tract for $493,373 ($31,427.83 per acre) | 106,477 |
| Industrial park lots 2, 3 and part of 4 | 376,360 |
| Payment of maintenance fees for industrial park lots | 10 |
| Forgiveness of debt due the estate and WLLC | 10 |
| "Impact fee" credits | 10 |
| Total | 1,026,586 |

In sum, according to the notice of transferee liability the total value of distributions made to petitioner was:

| | |
|------|------|
| Cash | $304,935 |
| Property | 1,026,586 |
| Total | 1,331,521 |

Petitioner concedes that he is liable as transferee of the assets

from the estate in the amount of $1,118,621[2] (a portion of the

---

[2] Petitioner concedes that the Estate distributed the following assets, with a $1,118,621 value, to him:

| Date | Cash |
|------|------|
| 3/5/85 | $5,000 |
| 10/28/85 | 7,500 |
| 12/16/88 to various attorneys | 61,367 |
| 2/2/90 to various attorneys | 6,733 |
| Cayman Islands Trust | 157,435 |
| Total | 238,035 |

Petitioner further concedes the following value of the distributed assets, as enumerated in the Settlement and Distribution Agreement recorded 12/28/93 in Polk County records OR 3326, at 1567:

| Property | Value |
|----------|-------|
| Attorney's fee obligations | $79,000 |
| Direct payment endorsed to Bogenschutz & Goldstein | 175,000 |
| Industrial park lot 8, 4.573 acres | 143,719 |
| Industrial park lot 9, 3.388 acres; lots 8 and 9 sold to Mannheim Auctions as part of a 15.6986-acre tract for $493,373 ($31,427.83 per acre) | 106,477 |
| Industrial park lots 2, 3 and part of 4 | 376,360 |
| Payment of maintenance fees for industrial park lots | 10 |
| Forgiveness of debt due the estate and WLLC | 10 |
| "Impact fee" credits | 10 |
| Total | 880,586 |

In sum, petitioner conceded that the estate distributed the following assets to him:

| | |
|---|---|
| Cash | $238,035 |
| Property | 880,586 |
| Total | 1,118,621 |

$10,925,101.10 total unpaid estate tax liability of the estate), unless the statute of limitations or the doctrine of laches bars the assessment of this liability. Thus, following concessions by both parties, the issue to be decided is whether the statute of limitations (or alternatively, the doctrine of laches) bars respondent from assessment and collection of the $1,118,621 transferee liability against petitioner.

The stipulation of facts and the attached exhibits are incorporated herein. The stipulated facts are hereby found.

At the time the petition was filed, petitioner resided in Fort Lauderdale, Florida.

### Background

On December 4, 1981, Martin Fridovich died testate. Petitioner served as personal representative of the estate until June 11, 1984, when he was replaced by his brother, Anthony Fridovich.

### The Estate Tax Return

On September 21, 1982, the estate filed a Form 706, U.S. Estate Tax Return, reflecting $3,883,147.43 in tax due; it paid $12,426.07. Pursuant to section 6166, the estate elected to defer payment of the balance ($3,870,721.36) for 5 years and to thereafter pay the balance in 10 annual installments of $387,072.14 each.

Estate of Fridovich v. Commissioner, Docket No. 42224-85

On August 26, 1985, respondent mailed a notice of deficiency to the estate, determining that the estate owed an additional $7,122,367 in estate tax. Thereafter, on November 21, 1985, the estate commenced a case in this Court contesting respondent's determinations, which case was assigned docket No. 42224-85 (docket No. 42224-85), Estate of Fridovich v. Commissioner. That case was set to be heard on November 28, 1988. The case settled, and on November 28, 1988, the following documents were filed and respective actions taken: (1) Pursuant to a joint stipulation, a $2,778,327.92 interim assessment was authorized; (2) this Court granted the parties' Motion to Stay Further Proceedings, postponing entry of decision until the final installment of tax was due or paid (whichever occurred earlier); and (3) the estate and respondent entered into a closing agreement (agreeing that a certain Cayman Islands Trust created by Martin Fridovich was a sham for income, gift, and estate tax purposes, and that the estate would be considered the actual owner of the Trust's assets for income, estate, and gift tax purposes).

The estate did not pay any of the required estate tax installments (pursuant to its section 6166 election) but instead requested extensions of time with respect to the tax installments due for 1987, 1988, and 1989. The requests for extensions were granted. In August 1990, the estate requested a further extension

of time for payment of its estate tax liability until September 1991; on October 19, 1990, this request was denied. Because the estate defaulted on its installment agreement, its section 6166 election was terminated as of October 19, 1990.

As of June 9, 2000, the estate had paid $129,990.47 of its estate tax liability. (On September 21, 1982, the estate remitted $12,426.07 with its original Form 706, and on August 14, 1992, the estate remitted $117,564.40.) The estate paid $2,289,770.55 in interest.

On April 22, 1996, respondent filed a Motion for Entry of Decision in docket No. 42224-85; on September 6, 1996, this Court granted respondent's motion and entered a decision reflecting a $3,835,638.40 unpaid estate tax liability. (The September 6, 1996, decision was not appealed.)

On May 28, 1993, the estate filed an offer in compromise regarding its estate tax liabilities; on October 27, 1994, respondent rejected the offer. On April 9, 1996, the estate filed a second offer in compromise; on June 27, 1996, respondent rejected this offer.

West Lakeland Land Co., Inc.

The major asset of the estate was a 100-percent stock ownership of West Lakeland Land Co., Inc. (WLLC), a land development S corporation. Anthony Fridovich was president of WLLC from 1984 until 1995, when the company was liquidated. On May 31,

1995, WLLC's assets were transferred to a Florida limited partnership, West Lakeland Land Co., Limited Partnership (WLLC Ltd.), in exchange for a 99-percent limited partnership interest in WLLC Ltd. Fridovich Holdings, Inc. (owned by Debbie Fridovich, petitioner's sister, and Anthony Fridovich), held a 1-percent general partnership interest in WLLC Ltd.

On March 19, 1996, the Internal Revenue Service filed Notices of Federal Tax Lien against WWLC Ltd., naming the partnership as nominee of the estate. On June 13, 1996, WLLC Ltd. brought suit against the United States, see West Lakeland Land Co., Ltd. Partnership v. United States, case No. 96-1157-CIV-T-21 (M.D. Fla.), to quiet title with respect to the partnership property and for release of liens.

On October 22, 1996, WLLC Ltd. filed for bankruptcy under chapter 11. See In re West Lakeland Land Co., Ltd. Partnership, case No. 96-14434-8CI (Bankr. M.D. Fla.), appeal docketed, No. 98-1609-CIV-T25E (M.D. Fla. Aug. 3, 1998). On November 12, 1996, the partnership filed an adversary complaint against the United States in its bankruptcy case, challenging the validity of the Government's nominee liens. See West Lakeland Land Co., Ltd. Partnership v. United States, 216 Bankr. 892 (Bankr. M.D. Fla. 1998), appeal docketed, No. 98-548-CIV-T23A (M.D. Fla. Mar. 16, 1998). On February 3, 1998, the bankruptcy court entered a judgment and opinion, finding that the nominee liens were invalid

and of no legal force or effect.

From February 25, 1982, through June 9, 2000, the date the stipulation herein was filed, the estate was under the jurisdiction of the Polk County Circuit Court, Probate Division. On December 22, 1997, respondent sent a notice of transferee liability to petitioner.

### Discussion

As stated supra, petitioner has conceded that he is liable as transferee of the assets of the estate in the amount of $1,118,621, unless the statute of limitations (or alternatively, the doctrine of laches) bars respondent from assessment and collection of the $1,118,621 transferee liability against petitioner. Respondent maintains that neither the statute of limitations nor the doctrine of laches precludes assessment and collection of petitioner's transferee liability. Petitioner disagrees.

We first address the statute of limitations issue. Pursuant to section 6501(a), the Commissioner has 3 years after an estate files its return in which to assess the tax or commence a court proceeding without assessment for the collection of the tax. With respect to the case before us, the period of limitations for assessment would have expired on September 21, 1985, 3 years after September 21, 1982, the date the estate return was filed. However, on August 26, 1985, respondent mailed a notice of deficiency to the estate; on November 21, 1985, the estate timely filed a petition

(docket No. 42224-85).

Pursuant to section 6503(a)(1) and section 301.6503(a)-1, Proced. & Admin. Regs., the period of limitations on assessment and collection of a deficiency is suspended for 90 days after a notice of deficiency is mailed. Once a proceeding regarding the deficiency is placed on the Tax Court docket, the period of limitations is further suspended until the Tax Court decision becomes final, and for an additional 60 days thereafter.

The August 26, 1985, notice of deficiency mailed to the estate immediately suspended the period of limitations for assessment, leaving 26 days on the statute. Docket No. 42224-85 remained on the Tax Court docket until September 6, 1996, when this Court entered its decision in the case. The decision became final 90 days thereafter; namely, December 6, 1996; it was not appealed. See secs. 7481, 7483. As a consequence of these actions, the period of limitations in docket No. 42224-85 was suspended from August 26, 1985 (the date the notice of deficiency was mailed to the estate), until December 6, 1996 (the date the decision became final), plus an additional 60 days thereafter, or February 4, 1997. See secs. 7481, 7483. Thus, the 26 days that remained on the period of limitations for assessment after the notice was mailed is tacked on to the suspension period with respect to the filing of a petition in this Court (February 4, 1997), resulting in March 2, 1997, being the expiration date of the period of limitations for

assessment in docket No. 42224-85.  See secs. 6501, 6503.

Pursuant to section 6901(c)(1), the period of limitations for assessment of a liability against an initial transferee is 1 year after the expiration of the period of limitations for assessment against the transferor.  See, e.g., Bresson v. Commissioner, 111 T.C. 172 (1998), affd. 213 F.3d 1173 (9th Cir. 2000).  Here, as noted, the period of limitations for assessment of the liability did not expire with respect to the estate until March 2, 1997, and with respect to petitioner before March 2, 1998, which was 70 days after the date (December 22, 1997) the notice of transferee liability was sent to petitioner.  Consequently, the notice of transferee liability to petitioner was timely, and the statute of limitations did not bar respondent from assessment and collection of the $1,118,621 estate tax liability against petitioner.

We now turn to petitioner's alternative argument that the doctrine of laches operates to preclude respondent's assessment and collection of the liability owed by petitioner.  The doctrine of laches bars a claim when the following three elements are present: (1) There was a delay in asserting a right or a claim; (2) the delay was inexcusable; and (3) there is undue prejudice to the party against whom the claim is asserted.  See, e.g., Kason Indus., Inc. v. Component Hardware Group, Inc., 120 F.3d 1199, 1203 (11th Cir. 1997); Albertson v. T.J. Stevenson & Co., 749 F.2d 223, 233 (5th Cir. 1984).  The doctrine of laches can be raised only by one

who comes into equity with clean hands.  See, e.g., <u>United States v. Weintraub</u>, 613 F.2d 612, 619 (6th Cir. 1979).

The timeliness of Government claims is governed by the statutes of limitations enacted by Congress.  See <u>United States v. Summerlin</u>, 310 U.S. 414, 416 (1940).  There was no inexcusable delay by respondent in asserting the claim of transferee liability against petitioner. Nor does petitioner come before the Court with clean hands. During the period when respondent was prevented from taking action to assess and collect the estate tax liability from the estate, all of the estate's assets were distributed from a sham Cayman Islands Trust created by Martin Fridovich to the trust beneficiaries and thereafter transferred by them to WLLC.  Although the estate owed tax and interest in 1985 in an amount greater than its assets, it continued to distribute assets to the estate beneficiaries in lieu of paying the estate tax.  Petitioner was a beneficiary of the estate receiving distributions, as well as the original personal representative of the estate.  He was aware of the estate's tax liability when he received the distributions from the estate.

To conclude, we hold that the doctrine of laches does not bar respondent from assessment and collection of the $1,118,621 estate tax liability against petitioner.

To reflect the foregoing,

<u>Decision will be entered
under Rule 155</u>.