**UNITED STATES of America,**
**Plaintiff,**

v.

**CITY AND COUNTY OF SAN FRAN-CISCO, Hetch Hetchy Water and Power, Defendant.**

**No. CIV–S051693 DFL GGH.**

United States District Court,
E.D. California.

Aug. 8, 2006.

Catherine J. Cerna, United States Attorney'S Office, Sacramento, CA, for Plaintiff.

David Wesley Ammons, City Attorneys Office, San Francisco, CA, for Defendant.

## MEMORANDUM OF OPINION AND ORDER

LEVI, District Judge.

Defendant City and County of San Francisco, Hetch Hetchy Water and Power ("San Francisco") moves to dismiss the first amended complaint ("FAC") of plaintiff the United States ("United States"). For the reasons stated below, the court: (1) GRANTS San Francisco's motion to dismiss the United States' fourth claim;

(2) GRANTS San Francisco's motion to dismiss the United States' fifth and seventh claims; (3) GRANTS San Francisco's motion to dismiss the United States' eighth claim; and (4) DENIES San Francisco's motion to dismiss the United States' first, second, third, and sixth claims.

## I.

The United States alleges the following facts in the complaint:

On August 23, 1999, a fire, which came to be known as the "Pilot Fire," started on private land and spread to the Stanislaus National Forest (FAC ¶ 6.) The fire started when a tree hit a power line owned and operated by San Francisco. (*Id.* ¶ 6. The Pilot Fire eventually burned 4,028 acres of National Forest land. (*Id.* ¶ 9.)) According to the complaint, San Francisco was negligent in not maintaining the area around its power lines. (*Id.* ¶ 7.) On February 18, 2000, the United States submitted a claim to San Francisco for the cost of fighting the fire and damages. (*Id.* ¶ 10.) San Francisco has not paid any part of the claim. (*Id.*)

On August 22, 2005, the United States brought this suit. On October 18, 2005, it filed an amended complaint. The United States raises eight claims against San Francisco: (1) a state law claim for negligence; (2) violation of California Civil Code § 1714(a); (3) damages under California Health and Safety Code §§ 13007, 13009 and 13009.1; (4) violation of the Raker Act of 1913, Pub.L. No. 63–14, 38 Stat. 242 § 4; (5) violation of 43 U.S.C. §§ 1733(g) and 1765; (6) violation of 16 U.S.C. § 551, 36 Code of Fed. Regs. § 261.1(b), and 18 U.S.C. § 1856; (7) violation of 43 U.S.C. §§ 1733(g) and 1765; and (8) breach of obligations under federal common law.

## II.

### A. Claim Four (Raker Act)

 San Francisco argues that the United States' fourth claim based upon the Raker Act should be dismissed because the Pilot Fire was an accidental fire that originated on private land whereas the Raker Act only covers conduct by San Francisco on the Stanislaus National Forest ("Forest") and Yosemite National Park ("Park"). (Reply at 5–6.) The United States takes the position that by its terms the Raker Act covers any activity by San Francisco—wheresoever that activity occurs—that results in damage to timber in the Forest or Park. (Sur-Reply at 6–7.) However, this argument is not convincing in light of the actual text of the Raker Act.

The introduction to section four of the statute is directed to conduct on public lands: "the said grantee shall conform to all regulations adopted and prescribed by the Secretary ... governing the Yosemite National Park ... [and] the Stanislaus National Forest." Pub.L. No. 63–14, 38 Stat. 242 § 4. The statute then establishes when San Francisco is liable for activities in the Forest or Park: "[San Francisco] shall not take, cut, or destroy any timber within the Yosemite National Park or the Stanislaus National Forest, except such as may be actually necessary in order to construct, repair, and operate its said reservoirs...." *Id.* Again the language addresses activities on public lands.

The last part of section four is also directed to conduct occurring in the Forest and Park: "[San Francisco] shall pay to the United States the full value of all timber and wood cut, injured, or destroyed on or adjacent to any of the rights of way and lands, as required by the Secretary of the Interior or the Secretary of Agriculture." *Id.* The term "rights of way" refers to those granted by the Act. The term "lands" refers to lands outside of the

rights of way designated by the Secretaries. The Act does not refer to rights of way or lands that are off the Forest or Park. In addition, the United States does not point to any regulation by either Secretary that purports to regulate San Francisco's activities on any lands, public or private, other than the Stanislaus National Forest and Yosemite National Park.

The Raker Act is much like a contract. It carefully specifies the obligations of the grantee and the grantor. All of these mutual obligations occur within identified public lands on the Stanislaus National Forest and Yosemite National Park. There is no hint or suggestion that conduct by San Francisco occurring off of the identified public property is somehow regulated if it has an adverse affect on timber in the Forest or Park. Under the United States' expansive reading, were San Francisco to fail to eradicate a tree disease in Golden Gate Park that was eventually transmitted to trees in the Stanislaus Forest, the Raker Act would provide a remedy. This is not a fair reading of the statutory language.

Because the Raker Act does not cover activities by San Francisco occurring outside of the Stanislaus National Forest and Yosemite National Park, the United States cannot recover for damage to public land

allegedly caused by San Francisco's negligence on private property. Therefore, the court GRANTS San Francisco's motion to dismiss the United States' fourth cause of action.

**B. Claims Five and Seven (Federal Land Policy Management Act)** [1]

 San Francisco argues that the United States' fifth and seventh claims also should be dismissed because the Pilot Fire originated on private land. (Reply at 6.) San Francisco correctly contends that 43 U.S.C. §§ 1733(b), 1733(g), and 1765 authorize claims for activities on public lands, not private land.[2] (Reply at 6.)

Under 43 U.S.C. section 1733(g), "[t]he use, occupancy, or development of any portion of the public lands contrary to any regulation of the Secretary or other responsible authority, or contrary to any order issued pursuant to any such regulation, is unlawful and prohibited." Section 1733(b) authorizes the Attorney General to institute a civil action for an injunction "to prevent any person from utilizing public lands in violation of regulations issued by the Secretary under this Act." Section 1765 requires that certain conditions be met before the United States will issue a permit for a right of way across public land.[3]

1. The United States' fifth and seventh claims contain almost identical allegations. The only difference is that the seventh claim includes a paragraph requesting an injunction under 43 U.S.C. § 1733(b). (FAC ¶ 31.)

2. These statutes are provisions of the Federal Land Policy Management Act ("FLPMA").

3. Section 1765 states:
Each right-of-way shall contain—
(a) terms and conditions which will (i) carry out the purposes of this Act and rules and regulations issued thereunder; (ii) minimize damage to scenic and esthetic values and fish and wildlife habitat and otherwise protect the environment; (iii) require com-

pliance with applicable air and water quality standards established by or pursuant to applicable Federal or State law; and (iv) require compliance with State standards for public health and safety, environmental protection, and siting, construction, operation, and maintenance of or for rights-of-way for similar purposes if those standards are more stringent than applicable Federal standards; and
(b) such terms and conditions as the Secretary concerned deems necessary to (i) protect Federal property and economic interests; (ii) manage efficiently the lands which are subject to the right-of-way or adjacent thereto and protect the other lawful users of the lands adjacent to or traversed by such

Similar to the Raker Act, these statutory provisions regulate activity on public land, not private land. Therefore, these provisions provide no authority to the United States to recover damages for injury to public land allegedly caused by San Francisco's negligence on private property or to seek an injunction ordering San Francisco to comply with federal regulations on private land. Accordingly, the court GRANTS San Francisco's motion to dismiss the United States' fifth and seventh causes of action.

### C. Claim Eight (federal common law)

■ San Francisco also moves to dismiss the United States' eighth claim on the ground that federal common law should not be created when state law already provides an adequate remedy. (Mot. at 3–5.) The United States acknowledges that its eighth claim is a federal common law claim that is not based on any federal statute, although it looks to various federal statutes for guidance. (Sur–Reply at 8; Opp'n at 9–16.) Because this claim is based on federal substantive law, and jurisdiction rests on 28 U.S.C. § 1345, the *Erie* doctrine does not apply. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *See United States v. California*, 655 F.2d 914, 916–17 (9th Cir.1980) (*"California"*) ("application of state substantive law is not mandated"). However, where federal common law provides the rule of decision but there is "no clear federal law to apply, federal courts have referred to state law to pro-vide the appropriate rule." *Id.* (quoting *United States v. Nationwide Mut. Ins. Co.*, 499 F.2d 1355, 1356–57 (9th Cir.1974)).

■ Here, there is no clear federal law to apply whereas there is clear state law expressly directed to damages and costs caused when a fire escapes from private lands. Cal. Health & Safety Code sections 13007 (allowing for recovery of damages to property caused by the fire), 13009 (allowing for recovery of fire suppression costs), 13009.1 (allowing for recovery of costs for investigating the fire). In these circumstances, state substantive law governs and provides the content of the federal common law claim. *See California*, 655 F.2d at 917–918. Given that the United States already brings claims under Cal. Health & Safety Code sections 13007, 13009, 13009.1, the federal common law claim is duplicative and will be dismissed.[4]

### D. Claims One, Two, Three, and Six (State law claims)

■ San Francisco argues that the United States' first, second, third, and sixth causes of action are barred by the state statute of limitations. (Mot. at 5–6.) Under Cal. Gov.Code section 954.4, "no suit for money or damages may be brought against a public entity ... until a written claim therefor has been presented to the public entity and has been acted upon ... or has been deemed to have been rejected...." If the public agency does not provide a written notice of a decision on the claim, then the suit must be brought within two years of its accrual. Cal. Gov.Code § 945.6.

---

right-of-way; (iii) protect lives and property; (iv) protect the interests of individuals living in the general area traversed by the right-of-way who rely on the fish, wildlife, and other biotic resources of the area for subsistence purposes; (v) require location of the right-of-way along a route that will cause least damage to the environment, taking into consideration feasibility and other relevant factors; and (vi) otherwise protect the public interest in the lands traversed by the right-of-way or adjacent thereto.

4. Had the court reached a different conclusion on the viability of the state statutory claim, as discussed in the next section, then the federal common law claim might have been permitted.

The United States alleges that it filed a claim with San Francisco on February 18, 2000 and brought suit on August 22, 2005. (FAC ¶ 10.) Because San Francisco did not reject the claim in writing, San Francisco argues that the United States had two years—until August 23, 2001—to bring its claim. (Mot. at 6.) Therefore, San Francisco asserts that claims one, two, three, and six should be dismissed as untimely. (*Id.*)

■ The United States responds that its suit is timely because the six year statute of limitations in 28 U.S.C. § 2415(b) applies. (Opp'n at 4.) Generally, the United States is not bound by state statutes of limitations. *United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940). However, San Francisco argues that the *Summerlin* rule does not apply to § 945.6 in light of an exception to *Summerlin* as explained in *United States v. California,* 655 F.2d 914 (9th Cir.1980). (Reply at 3–4.) The *California* court held that "a state statute which provides a time limitation as an element of a cause of action or as a condition precedent to liability applies to suits by the United States even if there is an otherwise applicable federal statute of limitations." 655 F.2d at 918 (citing *United States v. Hartford Accident and Indem. Co.,* 460 F.2d 17, 19 (9th Cir.1972)). However, the *California* opinion, if still good law, addresses only the initial filing of a fire suppression cost claim as a condition precedent to bringing suit. In this case, there is no question that the United States made such an initial filing. The *California* court was not presented with the issue of whether the two year statute of limitations operated to extinguish a claim or operated as a condition precedent.

In *Bresson v. C.I.R.,* 213 F.3d 1173, 1178 (9th Cir.2000), the Ninth Circuit emphasized the distinction between "claim-*extin-*

*guishment* provisions on the one hand, and timing requirements that form *conditions precedent* to the *accrual* of a claim on the other." Here, under § 945.4 a claim accrues—"no suit ... may be brought ... until"—when it is presented in writing and deemed denied. That fully accrued claim is extinguished by operation of § 945.6 if "suit" is not commenced within two years. None of the statutory language suggests that the two year requirement is a condition precedent to suit rather than a traditional statute of limitations. Thus, under the reasoning in *Bresson,* § 945.6, as a "claim-extinguishment" provision, would not apply to a claim by the United States that has previously accrued. Rather, the rule in *Summerlin* applies such that the United States had six years to file under the federal statute of limitations.

Moreover, the *Bresson* court also found in the alternative that the decision of the Supreme Court in *United States v. California,* 507 U.S. 746, 757, 113 S.Ct. 1784, 123 L.Ed.2d 528 (1993), established a new approach to the application of *Summerlin* that does not rely on whether the state statute of limitations is viewed as a "claim-extinguishment provision" or a "condition precedent" to the claim. According to *Bresson,* under the Supreme Court opinion the critical inquiry is two-fold: (1) whether "the right at issue was [ ] acquired through the operation of any federal law, and (2) [whether] the United States ... [came] to possess the relevant right by acting in its sovereign capacity." *Bresson,* 213 F.3d 1173, 1178 (9th Cir.2000).

The issue here is whether the "right" to recover costs and damages was created "through" or "by" a federal statute. This is a close question. On the one hand, the United States is proceeding under provisions of state law that gives a public agency the right to collect fire suppression costs and damages in certain circumstances. The "right" is one created by

state law. On the other hand, the United States is acting as the sovereign, as the caretaker of public lands in the National Forest and Park systems. Its invocation of the state law right is based entirely on its position as the sovereign, with the right and duty to manage and maintain public lands. *See* 43 U.S.C. § 1701(a)(8).[5] In this sense, its underlying right to collect money from San Francisco under California Health & Safety Code section 13009 derives from federal law. Given that the *Summerlin* rule is the general rule, that the United States complied with all conditions precedent to the accrual of its claim, and that the claim of the United States stems ultimately from its management and ownership of public lands, the court holds that the United States is not subject to the two year California statute of limitations. Accordingly, the court DENIES San Francisco's motion to dismiss the United States' first, second, third, and sixth claims.

### III.

For the reasons stated above, the court: (1) GRANTS San Francisco's motion to dismiss the United States' fourth claim; (2) GRANTS San Francisco's motion to dismiss the United States' fifth and seventh claims; (3) GRANTS San Francisco's motion to dismiss the United States' eighth claim; and (4) DENIES San Francisco's motion to dismiss the United States' first, second, third, and sixth claims.

IT IS SO ORDERED.

---

5. "[I]t is the policy of the United States that the public lands be managed in a manner that will protect the quality of scientific, scenic, historical, ecological, environmental, air and atmospheric, water resource, and archeological values; that, where appropriate, will preserve and protect certain public lands in their natural condition; that will provide food and habitat for fish and wildlife and domestic animals; and that will provide for outdoor recreation and human occupancy and use."