**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1447
_____

UNITED STATES OF AMERICA

v.

RUTH PATRAS,
                    Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. No. 1-08-cv-02079)
District Judge: Hon. Joseph E. Irenas
_____

Submitted Under Third Circuit LAR 34.1(a)
November 15, 2013
_____

Before: HARDIMAN, SHWARTZ, and SCIRICA, <u>Circuit Judges</u>.

(Filed: November 19, 2013)
_____

OPINION
_____

SHWARTZ, <u>Circuit Judge</u>.

The United States (the "Government") brought this suit to recover money that was

due to pay taxes owed by Ruth Patras's husband, Dr. Anthony Patras.  After a bench trial,

the District Court found that the Government had proved that defendant Ruth Patras was

liable as a transferee under New Jersey's Fraudulent Transfer Act, N.J.S.A. §§ 25:2-20 to -34 (the "NJFTA"), and entered a monetary judgment against her in the amount of $525,614, which she now appeals. We will affirm.

## I. Background

As we write primarily for the benefit of the parties, we recite only the essential facts.[1] Dr. Patras bought the property at 6 Princess Court in Holmdel, New Jersey (the "Property") on February 27, 1989 for $1,660,000 from the builders, brothers Walter and Jerry Karach. He has lived on the Property since 1989 without interruption. In August 1990, he married Ruth Patras, who has resided with him at the Property since their marriage. Between 1987 and 2006, Dr. Patras earned an average annual gross income of $355,931, but failed to pay most of his federal income taxes from 1993-2003. In 2007, the Government filed suit against him for unpaid taxes for the years 1996-2003, and in 2008, a default judgment was entered against him in the amount of $1,900,136.41. United States v. Anthony Patras, No. 07-cv-05321 (D.N.J. 2008).

In 1993, Anthony Patras filed a Chapter 11 bankruptcy petition. The bankruptcy court approved the sale of the Property for $800,000 to John and Olga Karach. John Karach was the father of Walter and Jerry and a friend of Dr. Patras. Although there was no written lease, Dr. Patras continued to live in the Property and pay rent to John Karach.

In 1996, John Karach told Dr. Patras that he wanted to sell the Property. Dr. Patras approached his friend, Donato Gallo, Jr. ("Gallo"), and suggested that Gallo

---

[1] Plaintiff does not challenge the District Court's factual findings, only the District Court's application of law to those findings.

purchase the Property so that the Patrases could continue to live there. Dr. Patras told Gallo that he would not lose money on the house and that Gallo would not incur any expenses in owning the home. They also agreed that Dr. Patras would buy the Property from Gallo within a year, after Dr. Patras resolved his financial problems. On June 6, 1996, Gallo bought the Property from John Karach for $843,000. Dr. Patras took an active role in the sale, calling the attorney who handled the closing on multiple occasions. Moreover, of the $228,000 that Gallo made as a down payment on the Property, $153,000 came from companies Dr. Patras controlled. Gallo contributed $75,000 from his own funds and the balance was financed by a mortgage. From 1996 until 2001, the Patrases resided at the home, paying Gallo $9,000 per month, which covered the mortgage, insurance, utilities, maintenance, and taxes for the Property. Gallo's accountant testified that these payments were "a smoke screen to cover for all the expenses." Supp. App. 1035.

In 2000, Gallo told Dr. Patras he wanted to sell the Property, and Gallo entered a series of transactions[2] transferring the Property to Ruth Patras. On June 8, 2001, Ruth Patras obtained a mortgage[3] on the Property of $900,000, having represented that the

---

[2] On April 16, 2001, Gallo executed a deed that transferred ownership of the Property to himself and Ruth Patras as tenants in common for consideration of less than $100. On June 6, 2001, Gallo and Ruth Patras transferred the Property to Ruth alone for less than $100 of consideration.

[3] The District Court found, and Ruth Patras does not dispute on appeal, that the mortgage application contained numerous misrepresentations, including her employment and income histories.

Property was worth $1,600,000.[4]  The mortgage was used to pay Gallo a purchase price

of $848,386.  That payment covered the balance of Gallo's mortgage, repaid Gallo the

$75,000 that he had used as a down payment, paid Dr. Patras the $153,000 his companies

loaned Gallo and covered the capital gains tax that Gallo would incur from the sale.[5]  As

a result, Gallo neither gained nor lost money on the transaction.  Again, Dr. Patras was

very involved in the transaction, corresponding with the attorney who handled the

closing.  The Patrases subsequently took out three mortgages[6] on the Property and at the

time of trial, Ruth Patras owed $1,300,000 on the Property.

The Government brought suit in the United States District Court for the District of

New Jersey seeking a money judgment against Ruth Patras.  After a bench trial, the

District Court concluded that Gallo was Dr. Patras's nominee and that Dr. Patras was the

beneficial owner of the Property during the time Gallo's name was on the title.  The

District Court then found that Ruth Patras acquired the Property through a fraudulent

transfer.  Accordingly, the District Court concluded that Ruth Patras was liable as a

fraudulent transferee and that the Government, as a creditor of Dr. Patras, was entitled to

a personal judgment against her.  Ruth Patras now appeals.[7]

---

[4] The District Court concluded that the Property was worth $1,221,000 at the time of the transfer from Gallo to Ruth Patras, which the parties do not dispute on appeal.
[5] Gallo testified that Dr. Patras was adamant that Gallo write a check to him personally to repay a $33,000 loan from one of his companies.
[6] The District Court found, and Ruth Patras does not dispute, that she again misrepresented her income and the length of time she had owned in the house in applying for these mortgages.
[7] The District Court had jurisdiction over this case pursuant to 26 U.S.C. § 7402 and 28 U.S.C. §§ 1340 and 1345.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291.

## II. Standard of Review

We review the District Court's legal conclusions de novo and its factual findings for clear error. Pell v. E.I. DuPont de Nemours & Co., 539 F.3d 292, 305 (3d Cir. 2008). When conducting clear error review, "an appellate court must accept the trial court's findings unless it is left with the definite and firm conviction that a mistake has been committed." Johnson v. SmithKline Beecham Corp., 724 F.3d 337, 345 (3d Cir. 2013) (quotation marks and citation omitted). To the extent that the District Court's determinations include mixed questions of law and fact, we "break down such conclusions into their components and apply the appropriate standard of review to each component." Pell, 539 F.3d at 305.

## III. Discussion

### A.

Ruth Patras first challenges the District Court's conclusion that Gallo was Anthony Patras's nominee. She contends that the District Court misapplied the factors for determining whether she was a nominee and erroneously failed to apply New Jersey law.

### (1) Law of Nominees

When there is a tax lien on a taxpayer's property, the Government may seek to satisfy it by levying upon property the taxpayer controls. When the "Government seeks to reach" real property, we must determine what rights the taxpayer has in such property to determine if it is subject to the lien. Drye v. United States, 528 U.S. 49, 58 (1999). If the property is under the control of a third party found to be the delinquent taxpayer's

5

nominee or alter ego, it can be subject to a tax lien. G.M. Leasing Corp. v. United States, 429 U.S. 338, 350-51 (1977).[8] A third party is a taxpayer's nominee where "the taxpayer has engaged in a legal fiction by placing legal title to property in the hands of [that] third party while actually retaining some or all of the benefits of true ownership." Holman v. United States, 505 F.3d 1060, 1065 (10th Cir. 2007); see also Fourth Inv. LP v. United States, 720 F.3d 1058, 1066 & n.3 (9th Cir. 2013). We initially look to state law to determine the taxpayer's ownership interest in the property and whether the title holder is merely a nominee.[9] See Drye, 528 U.S. at 58. If the taxpayer has a property interest under state law, then federal law determines whether that property interest is subject to a federal tax lien. Id.

The District Court considered the following factors in determining whether Gallo was Anthony Patras's nominee:

> (1) whether the nominee paid adequate consideration for the property; (2) whether the property was placed in the nominee's name in anticipation of a suit or other liabilities while the taxpayer continued to control . . . the property; (3) the relationship between the taxpayer and the nominee; (4) the failure to record the conveyance; (5) whether the property remained in the taxpayer's possession; and (6) the taxpayer's continued enjoyment of the benefits of the property.

---

[8] See also Fourth Inv. LP v. United States, 720 F.3d 1058, 1066 (9th Cir. 2013); Oxford Capital Corp. v. United States, 211 F.3d 280, 284 (5th Cir. 2000); LiButti v. United States, 107 F.3d 110, 120, 125 (2d Cir. 1997); Shades Ridge Holding Co. v. United States, 888 F.2d 725, 728 (11th Cir. 1989).

[9] Numerous courts have observed that the state and federal law standards for determining whether the titleholder is a nominee are very similar. See, e.g., Shades Ridge, 888 F.2d at 728.

6

App. 25 (citing United States v. Klimek, 952 F. Supp. 1100, 1113 (E.D. Pa. 1997)).

These factors correspond to those New Jersey courts[10] use to determine if a third party is

a "nominee." See Jugan v. Friedman, 646 A.2d 1112, 1119 (N.J. Super. Ct. App. Div.

1994) (a debtor's wife was a nominee because the debtor had transferred the property at

issue to his wife (factor 3) without receiving any consideration (factor 1) for the purpose

of evading his creditors (factor 2) while continuing to control and enjoy the benefits of

the property (factors 5 and 6)); Coles v. Osback, 92 A.2d 35, 38-40 (N.J. Super. Ct. App.

Div. 1952) (a son was the nominee owner of property for the benefit of his parents (factor

3), who lived there (factors 5 and 6); that the sale price of the property was below market

value (factor 1); and that the debtor placed the property in his son's name after suit was

filed against him (factor 2)); Sweney v. Carroll, 178 A. 539, 542-44 (N.J. Ch. 1935)

(considering similar factors); cf. Holman, 505 F.3d at 1065 (a third party is a nominee

where the taxpayer retains the benefit of ownership); Shades Ridge, 888 F.2d at 728-29

(weighing similar factors to determine "who has 'active' or 'substantial' control" (citing

Valley Fin., Inc. v. United States, 629 F.2d 162, 172 (D.C. Cir. 1980)).

Accordingly, the District Court applied factors set forth in New Jersey case law in

deciding that Gallo was Dr. Patras's nominee.

---

[10] Ruth Patras argues for the first time on appeal that the factors relied upon by the District Court in determining whether Gallo was Dr. Patras's nominee are not correct under New Jersey law. As stated herein, the District Court applied the same factors that New Jersey courts have applied and used most of the factors Ruth Patras asked it to apply.

**(2) Gallo was Dr. Patras's Nominee**

The District Court applied these factors and correctly concluded that Gallo was Dr. Patras's nominee. First, Gallo did not pay adequate consideration for the Property. The majority of the funds Gallo used to buy the Property were loaned to him by companies Dr. Patras controlled. After the sale, Dr. Patras made payments to Gallo sufficient to cover the monthly mortgage payment and other expenses, so that Gallo never lost or gained any money on the transaction.[11]

Second, as Dr. Patras admitted, Gallo purchased the Property "because [Dr.] Patras's financial difficulties prevented him from purchasing the house himself," App. 26, and he told Gallo he would buy the Property within one year,[12] after he resolved his financial problems. As other courts have recognized, a "delinquent taxpayer who . . . transfers money to a third party and directs the third party to purchase property and place

---

[11]Ruth Patras argues for the first time on appeal that New Jersey courts require, for the title holder to be deemed a nominee, that the "'true owner' paid for the property with his own funds or funds he obtained, was legally obligated on, and provided toward the purchase." Appellant Br. 33. She relies on Coles, which set aside a fraudulent conveyance based in part on the fact that the beneficial owners of the property at issue conveyed title without receiving consideration. 92 A.2d at 40. While that court considered the fact that the true owner had paid for the property with funds he borrowed, it certainly did not hold that this fact was required. Moreover, the District Court found that the Property was paid for at least in part by both Dr. Patras's funds and funds that Dr. Patras promised to repay.

[12] Ruth Patras also contends that the District Court improperly relied on the fact that Dr. Patras promised to purchase the Property from Gallo because New Jersey law provides that an option to purchase land is not an interest in land. Here, the "option to purchase" agreement was part and parcel of Dr. Patras's promise to keep Gallo from losing (or gaining) any money on the transaction, and demonstrates the parties' intent that Gallo serve as the title holder while Dr. Patras was the equitable owner. See United States v. Miller Bros. Constr., 505 F.2d 1031, 1036 (10th Cir. 1974) (holding that it was "clear that the option contracts given to taxpayer were part of more complex refinancing arrangements in which [taxpayer] remained the equitable owner of the land").

legal title in the third party's name may well enjoy the same benefits of ownership . . . as a taxpayer who has held legal title." Holman, 505 F.3d at 1065. That description is apt here, where the record established that Dr. Patras exercised ownership by living in the Property, loaning Gallo money for its purchase, participating in the closing, and covering Gallo's expenses.

Third, a close relationship existed between nominee, Gallo, and debtor, Dr. Patras. Each described their relationship as "best friends" and "like brothers," and they served as best men in each others' weddings. App. 836-47.

Fourth, although the transfer was recorded, this factor alone is not dispositive. Cf. Gilchinsky v. Nat'l Westminster Bank N.J., 732 A.2d 482, 491 (N.J. 1999) (lack of concealment was "only marginally relevant" in NJFTA case); In re Richards, 231 B.R. 571, 579 (E.D. Pa. 1999) (according the fact that the transfer was recorded "relatively little weight").

Fifth, the Patrases resided in the Property uninterrupted. Despite Ruth Patras's contention that they were renters with an option to purchase, the record is to the contrary. No lease was entered into evidence. Moreover, Gallo's accountant testified that labeling the payments "rent" was "a smoke screen to cover for all the expenses." Supp. App. 1035. In short, the evidence the District Court credited indicated that this was not a landlord/tenant relationship.

Thus, the District Court's finding that Gallo was a nominee and Dr. Patras was the beneficial owner of the Property is amply supported.

### (3) Gallo was not Ruth Patras's nominee

Ruth Patras also argues that if Gallo was Dr. Patras's nominee, Gallo was her nominee, too. She relies on cases involving the law of equitable distribution to argue that, by virtue of being married to Dr. Patras between 1996 and 2001, when he earned the income that paid for the Property, she had an ownership interest in the Property during that time period. The District Court correctly rejected her argument. As the District Court observed, "[t]here is no indication that the Patrases ever owned the Property as tenants by entireties, or that Dr. Patras attempted to put Ruth Patras on the Property's deed before the sale to Karach." App. 27 n.6. See Boardwalk Regency Corp. v. Burd, 620 A.2d 448, 449 (N.J. Super. Ct. App. Div. 1993) (affirming that a judgment debtor's wife could not be placed on the property's title after a fraudulent transfer when they had not been tenants by the entirety before the fraudulent transfer). Moreover, the cases on which Ruth Patras relies are inapposite because they all involve the division of property between spouses in divorce proceedings. See Carr v. Carr, 576 A.2d 872 (N.J. 1990); Kay v. Kay, 964 A.2d 324 (N.J. Super. Ct. App. Div. 2009). Thus, she provided no facts or law upon which to find that Gallo was her nominee.

Because Gallo was Dr. Patras's nominee and held bare title to the Property, and Dr. Patras was the true owner of the Property, we now turn to whether the transfer of title from Gallo to Ruth Patras constituted a fraudulent transfer from Dr. Patras to Ruth Patras.

### B.

Ruth Patras challenges the District Court's conclusion that she is a fraudulent transferee under New Jersey law. She first argues that the fraudulent transfer claim is

10

time-barred. She relies on the extinguishment clause in the NJFTA, which provides that "[a] cause of action with respect to a fraudulent transfer or obligation under this article is extinguished unless action is brought" within at most four years after the transfer was made or the debt was incurred. N.J.S.A. § 25:2-31. The Supreme Court has explained, however, that "the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights." United States v. Summerlin, 310 U.S. 414, 416 (1940). Accordingly, the Government's claim against Ruth Patras is not subject to the NJFTA's extinguishment provision. See Bresson v. Comm'r, 213 F.3d 1173, 1178 (9th Cir. 2000) (the Summerlin rule prevented the application of the California UFTA's extinguishment provision to the Government's tax collection claim).[13]

Ruth Patras next argues that the transfer to her from Gallo is not within the scope of the NJFTA. The purpose of the Fraudulent Transfer Act "is to prevent a debtor from placing his or her property beyond a creditor's reach." Gilchinsky, 732 A.2d at 488. The Act therefore permits "the creditor to undo the wrongful transaction so as to bring the property within the ambit of collection." Id. To accomplish this goal, the creditor must show: (1) "the debtor [or person making the conveyance] has put some asset beyond the reach of creditors which would have been available to them at some point in time but for

_____

[13] The case on which Ruth Patras relies, United States v. California, 507 U.S. 746 (1993), does not change the result. There, the Supreme Court held that where the United States proceeded as a subrogee, it could not succeed to a right (in that case, a claim under state statute) that had been extinguished by the running of a state limitations statute. Id. at 757-58. Here, the Government is not a subrogee but rather is "proceeding in its sovereign capacity," pursuant to federal statute. Id. at 757; see also Bresson, 213 F.3d at 1178.

the conveyance"; and (2) the debtor engaged in the transfer "with an intent to defraud, delay, or hinder the creditor." Id. at 488-89 (quotation marks and citation omitted).

As to the first element, contrary to Ruth Patras's argument, the transfer is not limited to those made by the debtor. Rather, the statute focuses on the transfer of property that would otherwise be available to creditors. Because a beneficial owner's property is "available" to the owner's creditors even if title is held by a nominee, see, e.g., Coles, 92 A.2d at 39-40, the Property was available to Dr. Patras's creditors. The Property was put beyond their reach by the nominee, Gallo—the "person making the conveyance"—and is thus subject to the NJFTA.

As to the second element, fraudulent intent on the part of the debtor is determined by consideration of, among other things, the so-called "badges of fraud" listed in the NJFTA, which include whether:

    a. The transfer or obligation was to an insider;
    b. The debtor retained possession or control of the property transferred
    after the transfer;
    c. The transfer or obligation was disclosed or concealed;
    d. Before the transfer was made or obligation was incurred, the debtor had
    been sued or threatened with suit;
    e. The transfer was of substantially all the debtor's assets;
    f. The debtor absconded;
    g. The debtor removed or concealed assets;
    h. The value of the consideration received by the debtor was reasonably
    equivalent to the value of the asset transferred or the amount of the
    obligation incurred;
    i. The debtor was insolvent or became insolvent shortly after the transfer
    was made or the obligation was incurred;
    j. The transfer occurred shortly before or shortly after a substantial debt
    was incurred; and
    k. The debtor transferred the essential assets of the business to a lienor who
    transferred the assets to an insider of the debtor.

12

N.J.S.A. § 25:2-26. A court must focus on whether any of the badges are present, "not whether some factors are absent." Gilchinsky, 732 A.2d at 489-90. While a single factor alone may be sufficient to establish fraudulent intent, "the confluence of several in one transaction generally provides conclusive evidence of an actual intent to defraud." Id. at 490.

Here, the District Court identified the presence of seven of the badges of fraud. Ruth Patras challenges the applicability of factors (a) (concerning the insider status of the recipient of the transferred property), (b) (concerning the debtor's control over the property after the transfer), and (e) (concerning whether the transfer was of substantially all of the debtor's assets). As set forth herein, the District Court properly found these factors, together with others, supported a finding of fraud.

First, the District Court properly found that the transfer was made to Ruth Patras, who is a relative of Dr. Patras and therefore an insider. See N.J.S.A. § 25:2-22(a)(1). Ruth Patras's argument to the contrary depends on the incorrect assertion that Gallo was the transferor under the NJFTA. As explained above, because Gallo is the mere nominee of Dr. Patras, New Jersey law considers Dr. Patras, the beneficial owner, as the transferor of the Property to Ruth Patras, an insider.

Second, the District Court properly concluded that Dr. Patras retained possession or control of the Property after the transfer. The District Court's conclusion was based on the facts that: (1) Dr. Patras "continued to live in the Property with his wife and family"; (2) Dr. Patras "provided the money for the mortgage payments as well as for any necessary maintenance"; and (3) the Patrases "took out several additional joint loans

13

against the Property in which Dr. Patras was listed as an owner." App. 30-31. Ruth Patras does not challenge any of those factual findings, and we agree with the District Court that the application of the law to those facts compels the conclusion that Dr. Patras was in control of the Property.

Third, Dr. Patras testified that the Property "was the only substantial asset he had," App. 31, and the District Court found that Dr. Patras controlled this asset and that Gallo transferred the asset to Ruth Patras at Dr. Patras's direction.

Thus, we agree with the District Court that the transfer of the Property occurred with the intent to hinder a creditor's ability to satisfy a judgment and hence constituted fraud under the NJFTA. [14] See Gilchinsky, 732 A.2d at 491.

## C.

Finally, Ruth Patras challenges the remedy the District Court imposed. The NJFTA provides that a creditor is entitled to a judgment voiding the fraudulent transfer "to the extent necessary to satisfy the creditor's claim." N.J.S.A. § 25:2-29(a)(1). Dr. Patras owed the United States taxes. As Dr. Patras was the beneficial owner of the Property while Gallo held the title, a tax lien attached to the Property. 26 U.S.C. § 6321 (providing that tax liens attach to "all property and rights to property, whether real or personal, belonging to" any person who fails to pay his federal taxes). The tax lien was

---

[14] Ruth Patras does not challenge the District Court's conclusion on the other four badges. In addition to the seven badges that give rise to an inference of fraud, the District Court found that there was direct evidence of fraud because: (1) both Dr. and Ruth Patras testified that they placed the Property in her name to avoid tax and bankruptcy liabilities; (2) Ruth Patras's loan applications included false statements about her income and assets; and (3) Dr. Patras was "heavily involved" in the transfer. App. 32-33. This evidence further supports the District Court's conclusion that the conveyance was fraudulent.

14

still in force at the time of judgment because Dr. Patras still had not paid his tax liabilities. See 26 U.S.C. § 6322.[15] Because the transfer of the Property from Dr. Patras's nominee to Ruth Patras was done to hinder collection on the lien, the District Court set aside the transfer from Gallo to Ruth Patras.

In addition, the District Court imposed a personal judgment against Ruth Patras pursuant to the NJFTA, which permits a judgment against a transferee to recover the lesser of the value of the transferred asset "at the time of the transfer, subject to adjustment as the equities may require," or "the amount necessary to satisfy the creditor's claim." N.J.S.A. § 25:2-30(b), (c). The District Court found that the Property was worth $1,221,000 at the time of the transfer to Ruth Patras. She paid Gallo $848,386 for the Property, of which Gallo paid $153,000 to Dr. Patras to repay the loans Gallo received from Dr. Patras's companies to buy the property from John Karach. The District Court thus reduced the purchase price by $153,000 and found that Ruth Patras paid Gallo $695,386 of consideration. Because her equity in the Property is limited to that amount, the District Court entered a judgment for the difference between the consideration she paid for the Property and its value at the time of transfer, which amounted to a judgment of $525,614.

We review a District Court's equitable determinations concerning remedies under the NJFTA for abuse of discretion. See United States v. Verduchi, 434 F.3d 17, 25 (1st

---

[15] "Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed . . . is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322.

Cir. 2006) (Rhode Island's enactment of the UFTA). Ruth Patras raises two challenges to the judgment. First, she argues that the District Court's calculation of liability is flawed because it excluded from the amount of consideration she paid Gallo the $153,000 that Gallo then returned to the companies Dr. Patras controlled. Accordingly, she contends that the judgment should be reduced to $372,614. Ruth Patras argues in the alternative that while the District Court found that $33,000 of the $153,000 went personally to Dr. Patras, it did not make a similar finding as to the remaining $120,000, and therefore the judgment should be reduced to $405,614. Both arguments are without merit. The District Court's conclusion is based on its factual findings that Dr. Patras controlled both companies, which were amply supported by the record, and therefore $153,000 of Ruth Patras's payment was indeed returned to Dr. Patras, through Gallo. Accordingly, the District Court did not abuse its discretion by including the $153,000 in its damage award.

Second, she contends that it was improper for the District Court to enter a judgment affecting Dr. Patras's rights when he was not a party to the action. She bases her argument on 26 U.S.C. § 7403(b), which states that "[a]ll persons having liens upon or claiming any interest in the property involved in [actions to enforce tax liens or subject property to payment of tax] shall be made parties thereto." Dr. Patras does not fall under that requirement, however, because there was no evidence that he affirmatively claimed to have an interest in the Property. See, e.g., Deft.'s Amended Proposed Findings of Fact and Conclusions of Law at 7-8, No. 08-2079 (D.N.J. Dec. 14, 2012), ECF No. 66 (asserting that the Property was placed out of reach of Dr. Patras's creditors when it was

16

sold to Karach and that Gallo's sale to Ruth Patras "was done by Defendant for her own legitimate purpose at her direction").

## IV. Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.