E-FILED
CNMI SUPREME COURT
E-filed: Dec 23 2025 04:52PM
Clerk Review: Dec 23 2025 04:52PM
Filing ID: 78061221
Case No.: 2025-SCC-0008-PET
Judy Aldan



IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

---

**IN RE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS,**
*Petitioner*,

*v.*

**SUPERIOR COURT OF THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS,**
*Respondent*,

**AND**

**WILLIE CARNELL FRINK,**
*Real Party in Interest–Respondent.*

**Supreme Court No. 2025-SCC-0008-PET**

---

**SLIP OPINION**

**Cite as: 2025 MP 14**

Decided December 23, 2025

———————

CHIEF JUSTICE ALEXANDRO C. CASTRO
ASSOCIATE JUSTICE JOHN A. MANGLOÑA
ASSOCIATE JUSTICE PERRY B. INOS

———————

Superior Court Criminal Action No. 22-0183
Presiding Judge Roberto C. Naraja

———————

MANGLOÑA, J.:

¶ 1    The Commonwealth petitions this Court for a writ of mandamus, seeking to vacate a trial court order that (1) required personal service of an order on Willie C. Frink ("Frink"), (2) quashed an arrest warrant, and (3) instructed the Commonwealth to request a new arrest warrant, as well as to order the trial court to amend a previous order to allow service on Frink's attorney. For the reasons stated below, we DENY the petition.

## I. FACTS AND PROCEDURAL HISTORY

¶ 2    Frink was arrested under a November 2022 arrest warrant on charges of sexual assault. While in custody, he appeared at a preliminary hearing where the court dismissed the charges without prejudice for lack of probable cause. The trial court found no probable cause after discounting the testimony of one of the Commonwealth's key witnesses. The Commonwealth then filed a petition for writ of mandamus, which we granted to clarify the proper standard for determining probable cause. We held that probable cause merely asks "whether the prosecution successfully presented believable evidence of all elements of the crime charged." *In re Commonwealth*, 2023 MP 5 ¶ 23 (quoting *Commonwealth v. Superior Court*, 2020 MP 22 ¶ 24). It does not permit the court to make determinations of disputed facts. *Id.* The writ vacated the dismissal order, reinstated the charges, and required a new probable cause determination using the correct standard.[1]

¶ 3    On remand, the court found probable cause and ordered Frink to appear for his arraignment before another judge. *Commonwealth v. Frink*, Crim. No. 22-0183 (NMI Super. Ct. July 3, 2023) (Order Finding Probable Cause on Counts I–IV) [hereinafter "the 2023 order"]. The court also required the Commonwealth to personally serve the 2023 order on Frink. Because Frink left the CNMI after the charges were dismissed, the Commonwealth instead served it on Frink's attorney.

¶ 4    Neither Frink nor his attorney appeared at the arraignment. The trial court issued a bench warrant for his arrest but held its execution in abeyance until the rescheduled arraignment.

¶ 5    At the rescheduled arraignment, Frink's attorney appeared solely to contest the court's exercise of personal jurisdiction. Frink later filed a motion to void the bench warrant and to quash the original arrest warrant that initiated the case. The trial court held a hearing on the issues of personal jurisdiction, the bench warrant, and the arrest warrant. Nearly a year later, it issued an order granting the motion to quash and void the warrants, and it directed the Commonwealth to obtain and serve a new arrest warrant [hereinafter "the 2025 order"].

---

[1]    In this proceeding, Associate Judge Joseph M. Camacho has filed a "Declaration" relating to the previous writ. Since his declaration does not address the issues in this second petition, we will not discuss it here.

¶ 6     In the 2025 order, the court concluded it retained discretion to require personal service of the 2023 order. Although service on counsel ordinarily suffices, it determined such service was inadequate where the court expressly required personal service and where the case had previously been dismissed. The court found that without personal service of the 2023 order, it lacked personal jurisdiction over Frink. It therefore directed the Commonwealth to comply with the 2023 order by personally serving Frink to reestablish jurisdiction.

¶ 7     In response, the Commonwealth filed another petition for a writ of mandamus, arguing that the trial court clearly erred in requiring the Commonwealth to personally serve Frink and that it erroneously ordered the arrest warrant quashed and the Commonwealth to request a new arrest warrant for Frink.

¶ 8     In turn, Frink contends the doctrine of laches bars the Commonwealth's petition as it was filed fifty-eight days after the 2025 order.

## II. JURISDICTION

¶ 9     We have jurisdiction to issue writs of mandamus under Article IV, Section 3 of the NMI Constitution and 1 CMC § 3102(b). *Bank of Saipan v. Superior Court*, 2001 MP 5 ¶ 1.

## III. STANDARD OF REVIEW

¶ 10    We review issues of law raised by a writ of mandamus de novo. *In re Commonwealth*, 2022 MP 5 ¶ 8. Whether the doctrine of laches bars a claim is a question of law, also reviewed de novo. *Matsunaga v. Cushnie*, 2012 MP 18 ¶ 19.

## IV. DISCUSSION

### A. The Doctrine of Laches Does Not Apply to Criminal Cases

¶ 11     Frink argues that the Commonwealth's petition is untimely and should be barred under the doctrine of laches. He relies on a prior decision in which this Court denied a writ of mandamus after the petitioner waited nearly fifty days following the relevant court order. *Bank of Saipan v. Martens*, 2007 MP 5 ¶¶ 12–13. However, *Bank of Saipan* and all other cases where we have applied laches were civil cases, as civil cases are the natural home of laches. *See, e.g.*, *id.*; *Rios v. Marianas Pub. Land Corp.*, 3 NMI 512, 524 (1993).[2] We decline to take such

---

2    Laches arose in the courts of equity as an affirmative defense in civil actions. Almost no jurisdiction recognizes its applicability in criminal cases. The closest any jurisdiction comes to using laches in the criminal context is using it to bar petitions of habeas corpus. *See Robbins v. People*, 107 P.3d 384, 389 (Colo. 2005); *Wright v. State*, 711 So. 2d 66, 67 (Fla. Dist. Ct. App. 1998); *Raso v. Wall*, 884 A.2d 391, 395 (R.I. 2005). Moreover, sovereign entities are not subject to laches. *E.g., United States v. Summerlin*, 310 U.S. 414, 416 (1940) (stating that "[i]t is well settled" that laches does not apply to the United States); *Illinois v. Kentucky*, 1990 U.S. LEXIS 6365, at *53 (U.S. June 29, 1990) (recognizing that laches does not apply to sovereigns such as the states); *United States v. Patras*, 544 Fed. Appx. 137, 143 (2013).

a novel approach as to use laches to bar the Commonwealth from filing a petition for writ of mandamus in a criminal case.

¶ 12     The proper standard for evaluating delay is prosecutorial delay. Prosecutorial delay requires: (1) the delay caused the defendant actual, non-speculative injuries, i.e., actual prejudice, and (2) that after considering the underlying reasons, the delay "offends those fundamental conceptions of justice which lie at the base of our civil and political institutions." *In re J.J.C.*, 2000 MP 8 ¶ 25. Frink proffered no evidence to support a finding of either prong. The Commonwealth filed its petition within fifty-eight days of the 2025 order, a reasonable time period considering its statutory obligation to consult with the alleged victim and the practical consideration of exploring alternatives before seeking extraordinary relief. *See* 6 CMC § 9104 (providing that departments and agencies involved in the prosecution of crimes shall do their best to respect the right of victims, including the right to be notified of court proceedings and the right to confer with the attorney for the government). Accordingly, we shall not dismiss the petition for delay but consider it on its merits.

### *B. Quashing the Arrest Warrant and Requiring a New Arrest Warrant was Not Clearly Erroneous*

¶ 13     In order to grant a petition for a writ of mandamus, we must consider: (1) whether the petitioner has no other adequate means to attain the relief desired; (2) whether the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) whether the trial court's order is clearly erroneous as a matter of law; (4) whether the order is an oft-repeated error, or manifests a persistent disregard of applicable rules; and (5) whether the order raises new and important problems, or legal issues of first impression. *Tenorio v. Superior Court*, 1 NMI 1, 9–10 (1989). The third factor is dispositive. If the trial court's decision is not clearly erroneous, mandamus is unavailable and the analysis ends. *In re Commonwealth*, 2023 MP 5 ¶ 8. Clear error exists only where no "rational and substantial legal argument" supports the ruling "even though on normal appeal a reviewing court may find reversible error." *In re Abraczinskas*, 2023 MP 12 ¶ 11 (quoting *In re Buckingham*, 2012 MP 15 ¶ 10). If clear error is shown, we weigh the other factors cumulatively. *In re Commonwealth*, 2023 MP 5 ¶ 8.

¶ 14     An arrest warrant is exhausted once used. *Carlson v. Landon*, 342 U.S. 524, 546 (1952); *United States v. Barefield*, 2024 U.S. Dist. LEXIS 135948, at *4 (S.D.N.Y. July 29, 2024). Once the Commonwealth executed the arrest warrant and took Frink into custody, the warrant was fully satisfied and could not be used again. *See Carlson*, 342 U.S. at 546. The Commonwealth would have needed to obtain a new arrest warrant to take Frink into custody, regardless of the trial court's order. The trial court's 2025 order was duplicative, but in no way contrary to the letter or intent of the law. As there is no clear error of law, we cannot issue a writ of mandamus based on the court's order to quash the arrest warrant and order the Commonwealth to request a new warrant.

### C. The Order to Personally Serve Frink was Not Clearly Erroneous

¶ 15    Although the trial court may have misstated the law on personal jurisdiction, this did not constitute clear error because the court also relied on an alternative, legally sound basis to require the Commonwealth to personally serve Frink.

¶ 16    A writ of mandamus restores a case to the procedural posture it occupied before the error that necessitated the writ. *See In re Commonwealth*, 2023 MP 5 ¶ 36. When the charges were reinstated, the proceedings reverted to the stage at which the error occurred: the probable cause hearing. At that point, personal jurisdiction over Frink had already attached. Under 7 CMC § 1102(a), the court had personal jurisdiction because Frink allegedly committed criminal conduct within the CNMI.

¶ 17    Once personal jurisdiction attaches, it continues throughout the life of the proceedings. *See Burnham v. Superior Court of Cal.*, 495 U.S. 604, 612 (1990) (holding that once a court acquired personal jurisdiction over an individual through personal service, the court could retain personal jurisdiction to enter judgment even after the individual left the state); *Graham v. Fenno*, 734 P.2d 983, 985–86 (Wyo. 1987) ("Once jurisdiction attaches, the district court's power over his person continues until all matters arising out of that litigation are resolved."). Jurisdiction does not simply evaporate when a defendant leaves the territory or is not personally served with a subsequent court order. That Frink has left the jurisdiction of the CNMI does not mean that the court has surrendered personal jurisdiction over him in turn. No authority supports the proposition that a court may lose jurisdiction mid-proceeding under these circumstances.

¶ 18    Frink argues that the court lacked jurisdiction over him because when he left the CNMI, the charges against him had been dismissed and no case was pending. He asserts that he departed with the settled expectation that the prosecution had concluded and that the court should give weight to this reliance.

¶ 19    We find this argument unpersuasive. The Commonwealth timely filed a petition for writ of mandamus after the court dismissed the charges. Frink appeared through counsel in the ensuing proceedings to determine whether the charges against him should be reinstated. Frink therefore knew, or should have known, that the dismissal was under review and he could be called back to court and face trial despite the dismissal. Moreover, accepting Frink's position that arraignment may not proceed without prior service of the notice of probable cause would create practical difficulties, if not outright impossibilities. Either the arraignment date would lapse before service could be accomplished, or Frink could indefinitely avoid arraignment by evading service.

¶ 20    Instead, under the circumstances presented here, the appropriate step after a finding of probable cause for reinstated charges was either to require personal service of the order setting arraignment or, if Frink could not be located within the CNMI, to issue a new arrest warrant and bring Frink before the court for arraignment. *C.f. State v. Pruitt*, 805 A.2d 177, 180 (Del. 2001) (holding that

reinstating charges against a defendant required that all parties receive adequate notice); *State v. Fair*, 450 N.E.2d 66, 69 (Ind. 1983) (ordering the trial court to re-issue an arrest warrant after charges were reinstated in an appeal of post-conviction relief).

¶ 21    While the court was incorrect in concluding that it lacked personal jurisdiction over Frink, that mistake does not rise to the level of clear error. *In re Abraczinskas*, 2023 MP 12 ¶ 11. Clear error exists only where no "rational and substantial legal argument" supports the ruling. *Id.* Here, the trial court did not rely solely on an erroneous jurisdictional theory. It explained that personal service was necessary to ensure Frink received proper notice of the new arraignment. Personal service exists in part as a procedural safeguard of a defendant's right to notice of a case against them. *Okla. Radio Assocs. v. Fed. Deposit Ins. Corp.*, 969 F.2d 940, 943 (10th Cir. 1992). When a court confronts the risk of a defendant lacking notice, ordering personal service is an appropriate use of the court's powers.

¶ 22    In this case, the trial court identified a legitimate basis for requiring personal service and included reasonable parameters for its execution. Under the rules of Criminal Procedure, the court serves orders on the parties only after arraignment, and the rules provide no mechanism to ensure service beforehand. COM. R. CR. P. 49(c). That gap creates a legitimate concern that a defendant might not receive actual notice of orders issued before arraignment. The risk was heightened here because the case had been previously dismissed without prejudice, and Frink left the CNMI under the belief that the matter was over. In these circumstances, the trial court reasonably concluded that service on the attorney was not sufficient to guarantee Frink had notice of the 2023 order. Additionally, the order to personally serve Frink had a cut-off date. This meant that if personal service was impossible by the date of arraignment, the Commonwealth could have reported that Frink could not be located in the CNMI and prompted the court to issue a warrant.

## V. CONCLUSION

¶ 23    The trial court did not commit clear error in ordering the Commonwealth to personally serve Frink with the 2023 order or in quashing the arrest warrant and requiring the Commonwealth to obtain a new one. Absent a showing of clear error, we are foreclosed from granting mandamus relief. We, therefore, DENY the Commonwealth's petition for writ of mandamus.

SO ORDERED this 23rd day of December, 2025.


_____/s/_____
ALEXANDRO C. CASTRO
Chief Justice

/s/

JOHN A. MANGLOÑA
Associate Justice

/s/

PERRY B. INOS
Associate Justice

COUNSEL

Daniel B. Johnson, Saipan, MP, for Petitioner.

Colin M. Thompson, Saipan, MP, for Respondent.

*NOTICE*

*This slip opinion has not been certified by the Clerk of the Supreme Court for publication in the permanent law reports. Until certified, it is subject to revision or withdrawal. In any event of discrepancies between this slip opinion and the opinion certified for publication, the certified opinion controls. Readers are requested to bring errors to the attention of the Clerk of the Supreme Court, P.O. Box 502165 Saipan, MP 96950, phone (670) 236–9715, e–mail Supreme.Court@NMIJudiciary.gov.*